**Paula White ZALENKO, Appellant,**

v.

**Frank T. WHITE, Appellee.**

Superior Court of Pennsylvania.

Submitted April 21, 1997.

Filed Aug. 25, 1997.

Reargument Denied Nov. 6, 1997.

Brenda M. Kobal, Moosie, for appellant.

Richard B. Henry, Honesdale, for appellee.

Before CAVANAUGH, TAMILIA and OLSZEWSKI, JJ.

OLSZEWSKI, Judge.

Following nine years of marriage, during which one child was born, Paula and Frank White separated and ultimately divorced. A 1994 court-approved custody agreement granted Paula primary physical custody of the couple's son, Daniel. Visitation was provided to Frank on alternating weekends, one weekday evening per week, specified holidays and five weeks per summer. At the time that the custody and visitation agreements were entered into, both Paula and Frank lived in Wayne County, Pennsylvania.

In July of 1996, Paula married Daniel Zalenko, a construction site supervisor at New Enterprise Stone and Lime Company. Paula was also employed at New Enterprise as a project office manager. Although temporarily employed in Wayne County, Mr. Zalenko owned a permanent residence in Bedford County. Several months earlier, New Enterprise had informed Mr. Zalenko that he was to be relocated to Bedford County, a three and one-half hour drive from Wayne County. Additionally, Paula was informed that her current position in Wayne County would be terminated after 1997, but that a permanent office manager position was available in Bedford County.

Since both her job and her new husband were relocating to Bedford County, Paula filed a petition for relocation seeking modification of the 1994 custody order in the Court of Common Pleas of Wayne County. As an alternate custody and visitation arrangement, Paula suggested that she retain primary physical custody of Daniel and that Frank's visitation be modified to allow Daniel to spend one weekend per month, specified holidays and the entire summer vacation, excluding the first and last weeks, with his father.

Following the appointment of a special master, hearings were held relative to the relocation petition on July 22 and August 6, 1996. On August 27, 1996, the Master filed his report and recommendations, wherein, *inter alia*, he denied Paula's relocation petition. Both parties filed exceptions to the report and, on October 2, 1996, oral argu-

ment was heard thereon. By Order dated November 5, 1996, the Honorable Robert J. Conway approved that portion of the Master's report recommending that the petition for relocation be denied.

■ In denying the relocation petition, both the Master and the trial court applied the three-pronged test developed by this Court in *Gruber v. Gruber*, 400 Pa.Super. 174, 583 A.2d 434 (1990). Therein, we stated that, while the overriding consideration in deciding whether relocation should be permitted is the best interests of the child, special attention should be accorded to the following three factors:

(1) the potential advantages of the proposed move and the likelihood that the move would substantially improve the quality of life for the custodial parent and the children and is not the result of a momentary whim on the part of the custodial parent;

(2) the integrity of the motives of both the custodial and non-custodial parent in either seeking the move or seeking to prevent it; and

(3) the availability of realistic, substitute visitation arrangements which will adequately foster an ongoing relationship between the child and the non-custodial parent.

*Gruber*, 400 Pa.Super. at 184–185, 583 A.2d at 439. *See also Gancas v. Schultz*, 453 Pa.Super. 324, 331, 683 A.2d 1207, 1210 (1996); *Vineski v. Vineski*, 450 Pa.Super. 183, 186–187, 675 A.2d 722, 724 (1996).

Additionally, with respect to the first factor enunciated, we held that "when the move will significantly improve the general quality of life for the custodial parent, indirect benefits flow to the children with whom they reside." *Gruber*, 400 Pa.Super. at 185, 583 A.2d at 439. Finally, we stated that, in considering the best interests of the minor children, the court must "focus on the primary custodial family." *Gruber*, 400 Pa.Super at 183, 583 A.2d at 438. *See also Vineski*, 450 Pa.Super. at 187, 675 A.2d at 724.

After applying the facts of the instant matter to the *Gruber* test, the trial court found that: (1) the proposed move would substan-

tially improve Paula's quality of life; (2) the parties' motives were pure; and (3) the alternate visitation schedule proposed by Paula would, in the event the relocation was permitted, be workable. Slip op., 11/5/96 at 7–8. Nonetheless, holding that "[t]his Court cannot find any positive benefit to Daniel, **individually,** in moving to Bedford County," the relocation petition was denied. *Id.* at 7 (emphasis added).

■ As stated previously, this Court has held that a "child's best interests will be indirectly but genuinely served" when an anticipated move is likely to substantially enhance the quality of life of the custodial parent. *Gruber,* 400 Pa.Super. at 183, 583 A.2d at 438. The importance of this derivative benefit was re-emphasized by this Court in the recent case of *Kaneski v. Kaneski,* 413 Pa.Super. 173, 604 A.2d 1075 (1992). Factually, *Kaneski* involved the appeal of the father of three minor children who was contesting a trial court order permitting appellant's former wife to relocate outside of the state. The basis of the appeal was that the lower court erred in allowing the relocation because there would be no "distinct and separate" advantage to the children resultant from the move. *Kaneski,* 413 Pa.Super. at 178, 604 A.2d at 1077. Rather, appellant argued, his former wife had only proven that the move would substantially benefit her life.

Holding that "Appellant's argument that the move would not benefit the children misinterprets the holding of *Gruber,*" this Court readily rejected the argument that the proponent of relocation needs to show an independent advantage flowing to the minor children which is distinct from the benefits found to inure to the petitioning parent. *Kaneski,* 413 Pa.Super. at 180, 604 A.2d at 1078. Rather, citing *Gruber* with approval, this Court held that "indirect benefits flow to the children" of the custodial parent benefiting from a proposed move. *Id.*

■ Since the facts underlying the instant appeal, and the legal issue presented therefrom, are so comparable to those of *Kaneski,* we hold that the trial court committed an error of law in concluding that, although Paula would benefit substantially from the move, Daniel would not. Moreover, because the court found that the remaining prongs of the *Gruber* test were satisfied; that is, the parties' motives were pure and an alternate, feasible, visitation schedule was available, we hold that the court erred as a matter of law in denying the petition for relocation.

Order reversed; jurisdiction relinquished.

Dissenting Opinion by CAVANAUGH, J.

CAVANAUGH, Judge, dissenting:

After careful review of the matter before us, I must respectfully disagree with the majority's conclusion that the trial court erred in denying the petition for relocation of the mother, Paula Zalenko.

In every relocation dispute the initial and overriding consideration is the best interests of the child. *Gruber v. Gruber,* 400 Pa.Super. 174, 181, 583 A.2d 434, 437 (1990). A court must examine the custodial parent's interest in exercising autonomy over his or her life and that of the child; the child's interest in developing and maintaining a relationship with the non-custodial parent; and the non-custodial parent's interest in rearing the child. *Id.* at 175, 583 A.2d at 434.

In an effort to accommodate these often conflicting principles we have adopted a three prong standard to apply in relocation disputes. *Id.* at 184–185, 583 A.2d at 440. The factors to be considered are: (1) whether the custodial parent has demonstrated that the move is likely to substantially improve the quality of life for the parent and child; (2) whether each party has established the integrity of their motives in either seeking the relocation or seeking to prevent it; and (3) the availability of a realistic, substitute visitation arrangement to ensure a continuing and meaningful relationship between the child and non-custodial parent. *Gancas v. Schultz,* 453 Pa.Super. 324, 325–326, 683 A.2d 1207, 1210 (1996); *Kaneski v. Kaneski,* 413 Pa.Super. 173, 179, 604 A.2d 1075, 1078 (1992); *Gruber,* 400 Pa.Super. at 184–185, 583 A.2d at 440.

In this case the mother argues that the trial court abused its discretion in failing to focus its analysis on the primary custodial family when determining the best interests of

the child. Specifically, she argues that the court erred in finding that the emotional and economic benefits that the mother would receive in relocating would not also benefit Daniel.

The majority relies upon the statement that "[o]rdinarily, when the move will significantly improve the general quality of life for the custodial parent, indirect benefits flow to the children with whom they reside." *Id.* at 185, 583 A.2d at 439. However, this still requires a finding that the move will substantially improve the life of *both* mother and child, which necessitates a careful case-by-case analysis. Presently, I cannot find that the mother has met her burden of demonstrating that the move will substantially improve both of their lives.

The majority also relies upon *Kaneski v. Kaneski,* for the proposition that we have rejected the argument that "the proponent of relocation needs to show an independent advantage flowing to the minor children which is distinct from the benefits found to inure to the petitioning parent." In *Kaneski* we stated that

> [w]e do not accept appellant's argument that there must be demonstrated a separate and distinct non-economic benefit to satisfy the first criterion of *Gruber.* While the *Gruber* court held that other benefits must not be ignored or overlooked, it did not require that a move which would significantly improve the quality of life on an economic basis be precluded because other less tangibles factors were lacking.

*Id.* at 180, 604 A.2d at 1078–1079.

I do not read *Kaneski* as requiring only that parent has to establish that his or her life will be substantially improved to satisfy the first criterion in *Gruber.* Custody disputes are delicate issues which must be handled on a case by case basis. That is the reason we prefaced the notion of indirect benefits in *Gruber* with the modifier "ordinarily." It can not be said that every case where the life of a parent is "substantially improved" through relocation, that the life of the child will automatically be "substantially improved." Nor do I believe that to be the intent of *Gruber.* Such a finding shifts the focus of the inquiry from the child to the parent. As stated, the standard should remain that a substantial improvement is shown for parent and child. The importance of this fact is demonstrated by the instant case.

Accordingly, I find the trial court's analysis to be sufficient. That court stated:

> There is no question that Mother would prefer to live with her new husband. Further, as she is able to continue her employment with New Enterprise Stone and Lime, permanently, at the same pay level, Mother would benefit from the move. However, in examining the benefits to Daniel, Mother has testified that the Tussey Mountain School District is comparable to Western Wayne Schools. She also admits that Daniel does not have any blood relatives or friends in Bedford County. Further, it appears that Daniel is a happy, well-adjusted child, who loves both parents. He has also enjoyed visits with his father's family almost weekly. This Court cannot find any positive benefit to Daniel, individually, in moving to Bedford County, that he would not obtain here.

These conclusions are supported by the record. In fact, during the past year, Daniel has spent a substantial amount of time with his father, much more than provided for under the original custody agreement. This fact did not escape the attention of the trial court, who noted that the parties have essentially shared "equal time" with Daniel. Daniel is currently in an environment where he sees his extended family and friends frequently. The mother admitted that Daniel has no relatives or friends in Bedford County. These factors weigh heavily in light of the fact that the record does not suggest any disparity between the school systems and the economic status of the parties. Therefore, I would find that there is nothing in the record to suggest that the move will "substantially improve" the life of Daniel, whose well-being is of primary concern. The mere fact that he will receive some benefits from the improvement of the mother's life does not equate with the required showing of a "substantial" improvement to his life.

Because I find that appellant has not shown a benefit in relocating for her child, I respectfully dissent and would affirm the trial court's order denying relocation.

I also note that the mother's final argument to this court merits mention. She argues that the trial court abused its discretion in failing to grant the request for a de novo hearing on exceptions to the master's report and recommendations. However, I find that no such request was ever made. On September 3, 1996, mother filed exceptions to the master's report and recommendations. Attached to the exceptions was a proposed order accompanying the motion requesting a hearing de novo. In her brief, mother's counsel argues that, over objection, the Wayne County Court Administrator crossed out "a hearing de novo" and wrote "an argument" on the original document. She now argues that she was denied a right to a de novo hearing. However, she acquiesced to the procedure of Wayne County and proceeded to argument on October 2, 1996. No formal objection was made in the record to suggest that mother requested a de novo hearing and denied that right. In fact, no formal request for a de novo hearing appears in the record. The only semblance of a request was on the proposed order she attached to the exceptions, where the words "de novo" were crossed out. We find this to be insufficient. Without a request or objection on the record, her argument is without merit.

Even if such a request was made, the law of this Commonwealth does not provide for an absolute right to a de novo hearing. In support of her argument, mother first argues that masters do not have the authority to hear matters of primary or shared custody. However, she cites to 23 Pa.C.S.A. § 3321, of the Divorce Code to support her contention and that section was suspended by Pennsylvania Rules of Civil Procedure, Rule 1920.91(4), insofar as it prohibits the appointment of masters in "partial custody cases."[1]

Furthermore, a master can hear a matter of "partial custody or visitation" pursuant to Pa.R.C.P., Rule 1920.51(a)(2)(i). Therefore, it is clear that the authority mother cites does provide that a master was permitted to hear the instant case.

In support of her argument that she was entitled to a de novo hearing following the exceptions from the master's hearing she cites *Ashford v. Ashford*, 395 Pa.Super. 125, 576 A.2d 1076 (1990). In *Ashford*, the parties contested an initial custody award granting shared custody. The case first was assigned to a master for a child custody conference, who recommended sole custody go to father. Mother then requested a trial de novo from the trial court and was granted that request. One of the issues considered on appeal was the propriety of a de novo review following a hearing officer's custody conference. On appeal, this court held that "when a party is not willing to accept the results of the conference proceeding and Order by the court based solely on those proceedings, the parties are entitled to a hearing de novo." *Id.* at 132, 576 A.2d at 1079.

At first glance, this case would appear to have created a right to a de novo hearing. However, the only statutory authority relied upon in *Ashford* has since been invalidated. In reaching the above conclusion we relied upon the Act of 1895, June 26, P.L. 316, 48 P.S. § 92, a statute which required that judges were to decide matters of children's custody. This statute was repealed in 1990. In *Ashford*, we also noted that the Divorce Code, 23 P.S. § 304, provided that a master was not to hear "issues of custody and paternity."[2] As stated above, this section of the Divorce Code was suspended by the Pa. R.C.P., Rule 1920.91(4), insofar as it prohibits the appointment of masters in partial custody cases. As the rules upon which *Ashford* rested have since been eliminated, this

---

1. Section 3321 of the Divorce Code once read:
   § 3321 Hearing by master
   The court may appoint a master to hear testimony on all or some issues, except issues of custody and paternity, and return the record and a transcript of the testimony to-

gether with a report and recommendations as prescribed by general rules . . .

2. 23 P.S. § 304 was repealed and recodified as 23 Pa.S.C.A. § 3321, however, the language of the statute remained identical.

case cannot be said to create an unequivocal right to a trial de novo following a master's hearing.[3] I would therefore conclude that *Ashford,* while correctly decided, is presently inapposite.

The Rules of Civil Procedure outline the procedures that a trial court must follow. These rules provide that once a trial court determines that an issue is one that a master is permitted to hear, the trial court may hear the issue or he may appoint a master to hear the case. When the case is referred to a master, the court and the parties must follow one of two alternatives. Pa.R.C.P.1920.55–1. Rule 1920.55–2 describes the first alternative. It provides that where a recorded hearing is held by a master, the parties are then entitled to file exceptions within ten days after the master files his report and recommendations.

In the alternative, a court can elect to follow Rule 1920.55–3, which provides that a party can, in writing, request a trial de novo within ten days of the filing of the master's report. Following the de novo hearing, the trial court is then to enter a final decree. Pa.R.C.P.1920–55–3(c). However, this alternative must be specifically adopted by local rule, otherwise, the proper procedure to follow is Rule 1920.55–2, which provides for exceptions and not a de novo review. Pa. R.C.P.1920.55–1(a). Moreover, this rule specifically mandates that "[n]o record shall be made of the hearing in proceedings held pursuant to this rule." Pa.R.C.P.1920.55–3(a). This is the only instance when a court must grant a de novo hearing.

Here the record clearly demonstrates that the county has elected to follow the first alternative requiring the parties to file exceptions. This conclusion is supported by the fact that a recorded hearing was held where testimony was taken under oath before a master. Further, the parties were provided specific notice that the proper procedure to follow was to file exceptions. The master filed his notice of filing a master's report on August 27, 1996, which notified the parties that the master's recommendations would be presented for the court's approval and any "exceptions must be filed within ten (10) days of that Order of the Court." The parties then filed exceptions which were heard in argument by the court.[4] Thus, the parties were clearly made aware of the procedure Wayne County followed and nowhere was mother entitled to a de novo hearing. Such a rule would render a would render the master's hearing a nullity. *See Pavie v. Pavie,* 414 Pa.Super. 294, 606 A.2d 1207 (1992) (where we previously criticized a county procedure allowing a de novo hearing following a master's recorded hearing on the issue of equitable distribution).

---

**3.** Appellant mother also cites *Rubin v. Rubin,* 230 Pa.Super. 591, 326 A.2d 578 (1974), to support the proposition that a party is entitled to a de novo hearing in a custody dispute. However, that case held, in part, that a hearing for divorce and alimony should not be held by a master. Because *Rubin* is not a custody case it is distinguishable from the one at bar. Nevertheless, any argument that the case could be analogous is without merit because the statutes relied upon for that proposition have have since been rescinded.

**4.** Although the trial court stated it was conducting a de novo review, such a review is not the same as a de novo hearing where testimony and evidence is taken. Here the court did not take testimony, rather the court only reviewed the testimony from the matter's hearings.