**Mellany S. MEALY, Appellant,**

v.

**Fred ARNOLD, Appellee.**

Superior Court of Pennsylvania.

Argued April 6, 1999.

Filed June 24, 1999.

**654**

Margaret T. Lucas, Sharon, for appellant.

Before POPOVICH and LALLY-GREEN, JJ. and CIRILLO, President Judge Emeritus.

POPOVICH, J.:

¶ 1 This is an appeal from the order of the Court of Common Pleas of Mercer County, which denied Appellant Mellany S. Mealy's ("mother's") petition to relocate with the parties' child to Fayetteville, North Carolina. Herein, mother raises three interrelated issues for our review:

1) Should the trial court have granted mother's request to relocate with the parties' minor child?

2) Should primary physical custody of the parties' child be transferred to father if mother moves to North Carolina?

3) Would the child's best interests be served by permitting mother to relocate to North Carolina with the parties' child?

Upon review, we find the trial court's conclusions in the present case are unreasonable in light of its factual findings. Accordingly, we vacate the order that denied mother's request to relocate and remand for further proceedings consistent with this opinion.

¶ 2 The standard by which this court reviews child custody cases is of the broadest type:

In reviewing a custody order, an appellate court is not bound by findings of fact made by the trial court which are unsupported in the record, nor is it bound by the court's inferences drawn from the facts. However, on issues of credibility and weight of the evidence, an appellate court defers to the findings of the trial judge, who has had the opportunity to observe the proceedings and the demeanor of the witnesses. Only where it finds that the custody order is "manifestly unreasonable as shown by the evidence of record..." will an appellate court interfere with the trial court's determination. Therefore, unless the trial court's ruling represents a gross abuse of discretion, an appellate court will not interfere with its order awarding custody.

*Swope v. Swope*, 455 Pa.Super. 587, 689 A.2d 264, 265 (1997) (quoting *E.A.L. v. L.J.W.*, 443 Pa.Super. 573, 662 A.2d 1109, 1112 (1995)). While "an appellate court is empowered to determine whether the trial court's incontrovertible factual findings support its factual conclusions ... it may not interfere with those conclusions unless they are unreasonable in view of the trial court's factual findings; and thus, represent a gross abuse of discretion." *Myers v. DiDomenico*, 441 Pa.Super. 341, 657 A.2d 956, 957 (1995) (quoting *McMillen v. McMillen*, 529 Pa. 198, 202, 602 A.2d 845, 847 (1992)).

¶ 3 "We are cognizant of the fact that the resolution of relocation cases, like the present one, 'involves imperfect and often painful solutions.'" *Baldwin v. Baldwin*, 710 A.2d 610, 614 (Pa.Super.1998) (quoting *Gruber v. Gruber*, 400 Pa.Super. 174, 583 A.2d 434, 441 (1990)). A court must consider, *inter alia*,

the custodial parent's desire to exercise autonomy over basic decisions that will directly affect his or her life and that of the children, a child's strong interest in maintaining and developing a meaningful relationship with the non-custodial parent; the interest of the non-custodial parent in sharing in the love and rearing of his or her children; and, finally, the state's interest in protecting the best interests of the children.

*Id.* at 438–39. Additionally, the *Gruber* court set forth three factors relevant to the determination of whether a custodial parent may relocate a geographical distance away from the non-custodial parent:

1) The potential advantages of the proposed move, economic or otherwise, and the likelihood the move would improve substantially the quality of life for the custodial parent and the children and is not the result of a [momentary] whim on the part of the custodial parent;

2) The integrity of the motives of both the custodial and non-custodial parent in either seeking the move or seeking to prevent it; and

3) The availability of realistic, substitute visitation arrangements which will foster adequately an ongoing relationship between the child and the non-custodial parent.

*Gancas v. Schultz,* 453 Pa.Super. 324, 683 A.2d 1207, 1210 (1996) (citing *Gruber,* 583 A.2d at 439). "These considerations must then be factored into the ultimate consideration of the court, which is to determine what is in the best interests of the child." *Plowman v. Plowman,* 409 Pa.Super. 143, 597 A.2d 701, 707 (1991). "[T]here is no black letter formula that easily resolves relocation disputes; rather, custody disputes are delicate issues that must be handled on a case-by-case basis." *Baldwin,* 710 A.2d at 614.

¶ 4 The facts relevant to this matter are as follows: Mother and Appellee Fred Arnold ("father") were never married, but have a daughter, who was born on August 19, 1986. Mother has been the primary custodial parent from the child's birth to the present. In March of 1991, the parties stipulated to an order which provided for shared legal custody of their daughter and awarded mother primary physical custody of their daughter, subject to specifically defined periods of partial custody with father.

¶ 5 Both parties, as well as their extended families, reside in Mercer County. Mother has allowed father extended periods of partial custody with their daughter during school vacations, the summer months and other periods outside those delineated in the custody order. Father testified that his proximity to his daughter has allowed him to become involved in her school and extra-curricular activities. For example, after father had been fired from his job for insubordination in 1996, he volunteered as an aide for the lunch program at school and assumed the role of assistant coach of his daughter's swim team.

¶ 6 In May of 1998, mother filed a petition to relocate with the parties' daughter to Fayetteville, North Carolina that August. The trial court held hearings on the matter on July 1 and 10, 1998. The testimony revealed that mother presently is engaged to Dr. Martin Doperak, a physician and captain in the United States Army, and they intend to marry in October of 1999. Dr. Doperak completed medical school in 1998, and has been assigned to complete his internship and residency at Fort Bragg in North Carolina. Dr. Doperak is not subject to deployment or transfer during the three-year period in which he will complete his internship and residency. Once completed, Dr. Doperak must serve in the military for three additional years. He then intends to leave the military and enter private practice.

¶ 7 Originally, mother and Dr. Doperak intended to relocate to North Carolina in August of 1998. In anticipation of the move and their marriage, mother and Dr. Doperak purchased a home, titled in both their names, in Fayetteville, North Carolina.[1] Fayetteville is a residential community located within commuting distance from the base. Mother and Dr. Doperak both testified regarding their plans for the future. Upon relocation, Dr. Doperak plans to provide financial support to mother, which would provide her and her daughter with an opportunity to acclimate

---

1. Captain Doperak has also made mother the primary beneficiary of his life insurance.

to the community and settle into their new home. Mother would then acquire work on a part-time basis for approximately one year. At the end of this period, mother intends to return to undergraduate school on a full-time basis and earn a bachelor's degree in psychology.

¶ 8 Throughout the hearings, Mother and Dr. Doperak extensively discussed the efforts they have made to serve the best interests of the parties' daughter upon relocation. For example, they have found a Catholic school in Fayetteville for the parties' daughter to attend. They chose this school for two reasons: First, it will allow the parties' daughter to continue her parochial education.[2] Second, both the school's facilities and its educational program are superior to those at the school daughter currently attends. In addition, mother and Dr. Doperak have formulated a plan designed to facilitate the relationship between father and daughter after the relocation. They also offered to allow father partial custody throughout the summer and certain school holidays and to pay at least half of the expenses involved in transporting the parties' daughter back to Pennsylvania for father's partial custody periods. Moreover, mother has expressed a willingness to return to Pennsylvania with daughter on additional occasions and to allow father additional periods of custody with their daughter at these times.

¶ 9 During an in-chambers interview, daughter expressed some hesitation about the move. Specifically, she informed the court of her reluctance to move away from her family and friends. Mother testified at the reconsideration hearing that the child had not expressed hesitation about the move until father became aware of the situation and she talked to him. Mother further relayed that the child expressed fear for her father's safety if she were to leave him.

¶ 10 Ultimately, the trial court denied mother's petition. He encouraged her to relocate, to relinquish primary custody to father and to allow their daughter to visit North Carolina over school holidays and summer vacations. The trial court promised to review mother's circumstances and reconsider her request to relocate her daughter after mother lived in North Carolina for one year. Both mother and her attorney advised the court that she would not leave Mercer County without her daughter and, accordingly, requested that the court not enter an order granting primary custody to father. Presently, the original custody order, which vests primary physical custody in mother, remains in effect.

■ ¶ 11 Preliminarily, we address father's contentions that *Gruber* is inapplicable to the case *sub judice* because the actual arrangement between the parties is one of shared custody. Here, the trial court expressly found that mother was the primary custodian, and since the record supports this finding, we will not disturb it on appeal. *See Swope*, 689 A.2d at 265; *E.A.L.*, 662 A.2d at 1112. *Gruber* plainly applies to the present case, which concerns a relocation petition filed by a parent with primary physical custody. We clarify, however, that the *Gruber* factors are merely "refinements of the basic standard which remains the best interest of the child." *Gancas*, 683 A.2d at 1210; *see also Lee v. Fontine*, 406 Pa.Super. 487, 594 A.2d 724, 726 (1991) (The *Gruber* holding does "not create a new standard and we hasten to stress the polestar of our analysis ... remains the best interests of the child.").

¶ 12 Next, we turn to mother's assertions of trial court error. The opinion of the trial court in this matter is brief:

The seminal case on relocation in Pennsylvania is *Gruber v. Gruber*, 400 Pa.Super. 174, 583 A.2d 434 (1990). In

---

**2.** The parties' daughter currently attends a private Catholic school in Greenville, Pennsylvania.

that case, the Court held that the main focus must be on the primary custodial family, in this case, the maternal mother.

There is no evidence that the move is contemplated to frustrate the custodial rights of the natural father and there is no question there exists an alternative custody arrangement which the Court could fashion. However, at this time, there appears to be no evidence that the natural mother's situation, and by implication, the child's, would improve by her moving to a place where she knows no one in order to live off the headquarters of the 82nd Airborne, a combat unit on almost continual alert, with her fiancé, a medical officer in the U.S. army. It should be further pointed out that the child wishes to remain in the Greenville area, where she is currently residing. All of her relatives and friends live in the area and she appears to be loved by everyone.

The Court has repeatedly suggested to the natural mother that she, on a trial basis, move in with her fiancé in North Carolina and see how matters develop in the next three to four months. The natural mother is reluctant to leave her child, and has advised the Court, by and through counsel, that she will not accept the Court's suggestion...

Trial Court's Findings of Fact and Order, 9/28/98, at 1–2.[3]

■ ¶ 13 Upon careful consideration of this matter, we conclude that the trial court's finding that mother's circumstances would not improve if she were to relocate is manifestly unreasonable. *See Myers*, 657 A.2d at 957; *McMillen*, 529 Pa. at 202, 602 A.2d at 847. Specifically, we find that the trial court misapplied the *Gruber* standard when it refused to consider non-economic benefits that would accrue to mother upon relocation. The trial court was of the opinion that these intangible benefits were irrelevant under *Gruber* and its prog-

eny. This was error, as the first factor set forth in *Gruber* expressly permits the court to consider "the potential advantages of the move, *economic or otherwise*" when considering a relocation petition. *Schultz*, 683 A.2d at 1210 (emphasis added); *accord Gruber*, 583 A.2d at 439; *White v. White*, 437 Pa.Super. 446, 650 A.2d 110, 113 (1996). In the present case, it is clear from the trial court's comments during the custody hearing that it believed that relocation to North Carolina would further mother's personal happiness and emotional well-being. For example, at the reconsideration hearing, the court acknowledged,

"I know this is a fine man that you're proposing to enter into a relationship with ... This is a fine man. *You must look out for not only your child's best interests but your own interests* ... I'm very concerned you'll get so wired up in this [custody] issue *that you'll forfeit you and the captain's opportunity for happiness.*

N.T., 8/5/98, at 16, 17, 18 (emphasis added). During the original custody hearings, mother informed the trial court that she was unwilling to relocate without her daughter, and the trial court remarked,

[Y]ou are a perfectly respectable woman. You are going on. I made a tough call. I am paid to make tough calls, but I beg you not to throw away happiness because of this [decision] and your daughter would want you to do it. ... I urge you to seek your future."

N.T., 7/10/98, at 86–87. The court further admonished,

If what you do is sit here, you haven't given yourself a chance in the world. All you have done is guarantee you are in the same treadmill, same misery, same problems, and that doesn't make a bit of sense to anybody....

N.T., 7/10/98, at 87–88. It is clear from these excerpts from the custody hearing transcripts that the trial court believed

---

3. Although the trial court stated in its findings of fact and order that it planned to file a

1925(b) opinion at a later date, it ultimately declined to do so.

that relocation would advance mother's non-economic interests.

¶ 14 Moreover, it is evident from the record that the relocation would benefit mother financially as well. Mother and daughter currently reside with mother's parents. Before living there, mother and daughter resided in an apartment. In North Carolina, they would live within a lakeside residential development in a four-bedroom home with a yard. Mother shares title to this home. Since Captain Doperak will provide her with financial support, mother would no longer be required to work three part-time jobs in order to support her daughter.[4] Additionally, this financial support will allow mother to complete her undergraduate education and thus enhance her earning capacity. From this evidence, we conclude that relocation would advance both the immediate and long-term economic interests of mother.

 ¶ 15 In sum, mother has shown that the quality of her life would significantly improve upon relocation. The record supports the trial court's findings that the relocation was not the result of a momentary whim on the part of mother and

that mother's motives in seeking to relocate with her daughter were pure. Further, the trial court was confident that it could fashion a realistic, substitute visitation arrangement that would adequately foster the relationship between father and child. Hence, we conclude that mother has satisfied each of the factors set forth in *Gruber*.[5]

¶ 16 In the present case, the trial court concluded that relocation would not improve the quality of mother's life and, therefore, declined to consider whether mother's relocation to North Carolina was in the child's best interests. We have concluded that mother satisfied the factors set forth in *Gruber*. Thus, a remand is necessary to allow the trial court to factor these considerations "into the ultimate consideration[ ], which is to determine what is in the best interests of the child." *Gancas*, 683 A.2d at 1213 (quoting *Plowman*, 597 A.2d at 707); *accord Rowles v. Rowles*, 542 Pa. 443, 449, 668 A.2d 126, 129 (1995).[6]

¶ 17 Based on the forgoing, we vacate the order denying mother's request for relocation and remand for further proceedings consistent with this opinion.

---

4. Mother testified her financial responsibilities and, thus, her workload has increased due to father's failure to pay child support arrearages.

5. We also share mother's concern that the trial court placed undue emphasis on the fact that Doctor Doperak will work at Fort Bragg. In its opinion, the trial court expressed concern that mother would live "off the headquarters of the 82 nd Airborne, a combat unit on almost continual alert." Trial Court's Findings of Fact and Order, 9/28/98, at 1. Also, during the reconsideration hearing, the trial court commented that it was primarily concerned about "collateral damage" due to Doctor Doperak's involvement in the military. N.T., 8/5/98, at 18. The trial court also expressed concern that mother would be forced to attend officers' parties. Apparently, the judge's concerns arose from his own experiences while serving in the military in the 1960's. The judge's preoccupation with his military experience persisted throughout the hearings—despite the uncontradicted testimo-

ny of mother that she need not be involved in any activities on the base and of Captain Doperak with respect to his status at the base, his non-deployable designation and the intensive support system in the neighborhood.

6. In this appeal, mother argues that in failing to consider daughter's best interests, the trial court failed to weigh certain important considerations. For example, mother contends that the trial court failed to consider father's inability to control his violent temper. Mother testified and father admitted that he was physically abusive when they resided together and that such abuse continued after the parties ceased co-habitation. In fact, mother has filed at least eight police reports against father. We agree with mother that this is a factor that the court must consider when it evaluates the best interests of the child. *See* 23 Pa.C.S.A. § 5303(a)(2) (In making an order for custody, the court must consider "each parent and adult household member's present and past violent or abusive conduct[.]").

¶ 18 Order vacated. Case remanded. Jurisdiction relinquished.