Leslie K. ANDERSON, Appellee,

v.

Todd J. McVAY, Appellant.

Superior Court of Pennsylvania.

Argued Oct. 20, 1999.
Filed Dec. 13, 1999.

Jon S. Pushinsky, Pittsburgh, for appellant.

Rodney D. Shepherd, Pittsburgh, for appellee.

Before FORD ELLIOTT, ORIE MELVIN, and OLSZEWSKI, JJ.

OLSZEWSKI, J.:

¶ 1 Appellant ["Father"] appeals an order of December 30, 1998, which allowed appellee ["Mother"] to relocate their two children to North Carolina. He claims the trial court misapplied the best interests of the child standard in relocation cases that we set out in *Gruber v. Gruber*, 400 Pa.Super. 174, 583 A.2d 434 (1990). We disagree, and affirm.

¶ 2 The trial court aptly described the facts of this case:

The parties' son, Ian was born in July of 1990. The parties were married in 1993, and their daughter Zoe was born in April of 1993. After the parties were separated in January 1995 through January 1998, mother was the primary caretaker of the children and father had partial custody every other weekend and alternating holidays. Despite the existence of a court order prohibiting her from relocating the children from the jurisdiction, in early 1998, mother moved with the children from Pittsburgh to Black Mountain, North Carolina (near Asheville) because of a new job as the director of Publications for Christian United Believes. Father sought the return of the children and mother filed a petition for relocation. In February [the court] signed a preliminary order allowing mother to temporarily keep Zoe in North Carolina, but requiring Ian to return to Pennsylvania since Ian was in the middle of the school year. In March of 1998, the parties entered a consent order which required mother to return Zoe to Pennsylvania. Because father was temporarily incarcerated for DUI, the children lived with their baby-sitter, Cindy Collins, until school ended in June. From June, 1998, through the time of the hearing, the children lived with their father. Father's request for primary physical custody of the children was consolidated with the hearing on mother's request for relocation.

[The court's] order of December 30, 1998 provided for the parties to share

legal custody, but granted mother's request for relocation and awarded her primary custody during the school year in North Carolina with father having partial custody in Pittsburgh for the majority of school vacations and at least three long weekends per school year. Father was awarded primary custody during the summer months with mother having two weeks vacation and mother or her parents having at least one weekend.

Trial Court Opinion, 5/10/99, at 1–2.

¶ 3 Our review of child custody issues is well established:

On appeal, our scope of review is broad in that we are not bound by deductions and inferences drawn by the trial court from the facts found, nor are we required to accept findings which are wholly without support in the record. On the other hand, our scope of review does not authorize us to nullify the fact-finding function of the trial court in order to substitute our judgment for that of the trial court. Rather we are bound by findings supported in the record, and may reject conclusions drawn by the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*Zummo v. Zummo*, 394 Pa.Super. 30, 574 A.2d 1130, 1142 (1990); *see also, e.g., Thomas v. Thomas*, 739 A.2d 206, 208 (Pa.Super.1999); *Baldwin v. Baldwin*, 710 A.2d 610, 612 (Pa.Super.1998); *Lee v. Fontine*, 406 Pa.Super. 487, 594 A.2d 724, 725 (1991).

¶ 4 In granting Mother's request for relocation, the court applied the three-pronged test developed by this Court in *Gruber* where we stated that, in deciding whether relocation should be permitted, special attention should be accorded to the following three factors:

First, the court must assess the potential advantages of the proposed move and the likelihood that the move would substantially improve the quality of life for the custodial parent and the children and is not the result of a momentary whim on the part of the custodial parent....

Next the court must establish the integrity of the motives of both the custodial and non-custodial parent in either seeking the move or seeking to prevent it....

Finally, the court must consider the availability of realistic, substitute visitation arrangements which will adequately foster an ongoing relationship between the child and the non-custodial parent.

*Gruber*, 583 A.2d at 439. These factors must be applied under the umbrella of the ultimate objective of determining the best interests of the child. *See Clapper v. Harvey*, 716 A.2d 1271, 1273 (Pa.Super.1998).

¶ 5 With respect to the first *Gruber* factor, Father argues that the court impermissibly concluded that the Mother's move to North Carolina would substantially improve the quality of life for Mother and the children. The trial court found that while the move would not significantly improve her economic condition,[1] the relocation did improve the quality of her life because of increased job satisfaction. *See* trial court opinion, at 3. Father maintains that relocating in order to advance one's religious aspirations while at work is not a "significant improvement." He also contends that the court did not make a finding that the relocation would directly improve the quality of life of the two children.

¶ 6 A court need not consider only economic benefits when determining whether relocation substantially improves the quality of life of the parent. *See Mealy v. Arnold*, 733 A.2d 652, 657 (Pa.Su-

---

1. Mother's pay is slightly less in her new position. Including overtime, she earned approximately$30,600 in her last year at her old employer, Hospital Council of Western Pennsylvania. She now earns a salary of $30,000 in her new position, but need not work overtime. *See* N.T., 12/29/98, at 108.

per.1999) (holding it error for trial court not to consider the effect of relocation on the mother's "personal happiness and emotional well-being"); *Gruber*, 583 A.2d at 439 ("In considering the prospective advantages to the move, a court shall not limit itself solely to enhanced economic opportunities for the custodial parent."). Here the trial court found, and we agree, that Mother's new job provided spiritual fulfillment by being able to further her religious convictions on the job. Further, and perhaps more importantly for her children, she has greater job satisfaction and career opportunity as a director of publications than she did in her old job as a graphic specialist. She also testified that she enjoyed the slower pace of her new surroundings.[2] We cannot say it was manifestly unreasonable for the trial court to conclude that her life was substantially improved.

¶ 7 We have held that it is not required to show direct tangible benefits to the children to satisfy the first *Gruber* prong. Rather, "when the move will significantly improve the general quality of life for the custodial parent, indirect benefits flow to the children with whom they reside." *Gruber*, 583 A.2d at 439. This is because "the best interests of the child are more closely aligned with the interests and quality of life of the custodial parent." *Baldwin*, 710 A.2d at 614. Contrary to appellant's assertion, there is no need for Mother to show an independent benefit, apart from that of Mother, flowing to the children because of the relocation. *See Zalenko v. White*, 701 A.2d 227, 229 (Pa.Super.1997). It follows, therefore, that Zoe and Ian benefit from Mother's improved quality of life. The first prong of *Gruber*, therefore, has been met.

¶ 8 The second requirement of *Gruber* requires an examination of the motives of the parties in seeking or opposing relocation. "The court must assure itself that the move is not motivated simply by a desire to frustrate the visitation rights of the non-custodial parent or to impede the development between the child and the non-custodial parent." *Gruber*, 583 A.2d at 439. Here, while the court determined that "the parties' motives were based on the individual needs of the parties, rather than the best interests of the children," it also determined that the parties were not acting vindictively. Trial court opinion, at 3. Appellant claims that Mother's removal of the children, in violation of the court's order, provides evidence that she would interfere with Father's attempts to visit with the children. The trial court did find that Mother acted "selfishly" in taking the children to North Carolina without court permission. *See id.* We have held, however, that disobedience of a court order "is only one factor of many to be considered when making a best interests of the child determination." *Clapper*, 716 A.2d at 1275. There is no convincing evidence that Mother chose to relocate for any other reason other than to improve the quality of her life, and the court found that her actions were not done to interfere with Father's visitation rights.

¶ 9 The final prong of *Gruber* requires that there be realistic arrangements available giving the non-custodial parent the opportunity to maintain a relationship with the children. A relocation request will not be denied simply because existing visitation arrangements cannot be maintained. *See Gancas v. Schultz*, 453 Pa.Super. 324, 683 A.2d 1207, 1212 (1996). Here, the court structured a visitation arrangement allowing Father "probably more total time with the children than he had before [M]other's relocation." Trial court opinion, at 4. There was testimony from a psychologist that Mother would be more flexible in making visitation arrange-

---

**2.** "It allows you to stop a moment, smell the roses. You don't have to rush to go everywhere. When I lived in Pittsburgh, everything was rush, rush, rush. I like the calm-ness, the serenity of the mountains. I like the family environment that it encourages." N.T., 12/29/98, at 144.

ments than Father. *See* N.T., at 52–53. There is no evidence that the new visitation arrangement is impractical or unrealistic.

¶ 10 Having found that the relocation was justified, we must also make a separate inquiry whether the custody arrangement is in the best interests of the children. *Thomas*, 739 A.2d at 212. The trial court found that Mother was a "more capable full time parent" and "more attuned to the emotional needs of the children." Trial court opinion, at 6. Further, the children expressed a preference to live with their mother in North Carolina. *See* N.T. at 7. Before Mother's relocation petition, Father was content with the custody arrangement. We find that it would be in the children's best interest to remain with Mother.

¶ 11 This decision does not preclude Father from applying for a modification of the custody arrangement should there be a change in circumstances. Custody orders may be modified if the circumstances indicate that the best interests of the children merit such an order. *See G.B. v. M.M.B.*, 448 Pa.Super. 133, 670 A.2d 714, 718 (1996).

¶ 12 Order affirmed.

¶ 13 Concurring Statement by ORIE MELVIN, J.

ORIE MELVIN, J., concurring:

¶ 1 The trial court held the first *Gruber* prong was satisfied based solely on its finding that the move improved Mother's quality of life. Because we are bound by this Court's decision in *Zalenko v. White*, 701 A.2d 227 (Pa.Super.1997), I must agree that neither the trial court nor the Majority erred in relying on that decision in concluding that the first *Gruber* factor was met. *Gruber* requires an examination of whether the relocating parent has demonstrated that the move is likely to substantially improve the quality of life for the parent *and* the child. Our Court in *Zalenko* held that a parent seeking to relocate with a child need not show an independent advantage to the child from the move. Rather, the Court found that if the move substantially benefits the relocating parent, such benefits flow to the child and are sufficient for purposes of *Gruber*.

¶ 2 I write separately to express my concern that a relocating parent's improved quality of life should be but one aspect to consider in determining whether the first *Gruber* factor has been satisfied. I believe there should be a separate and independent advantage of the move to the child. Such advantage should be independent from indirect benefit a child will receive from the relocating parent's improved quality of life. This comports with our overriding concern that the decision must be in the child's best interests. In this respect, I agree with Judge Cavanaugh's dissenting opinion in *Zalenko*, in which he wrote:

> Custody disputes are delicate issues which must be handled on a case by case basis ... It can not be said that every case where the life of a parent is "substantially improved" through relocation, that the life of the child will automatically be "substantially improved." Nor do I believe that to be the intent of *Gruber*. Such a finding shifts the focus of the inquiry from the child to the parent. As stated, the standard should remain that a substantial improvement is shown for parent and child.

*Zalenko* at 230 (dissenting opinion by Cavanaugh, J). As I share in Judge Cavanaugh's concerns in *Zalenko*, I must concur in the Majority's decision.