J-S90002-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| L.M., MOTHER | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| R.S., FATHER | |
| Appellant | No. 2072 EDA 2016 |

Appeal from the Order Entered June 22, 2016
In the Court of Common Pleas of Chester County
Civil Division at No(s): 2014-06080

BEFORE:  OTT, J., SOLANO, J. AND JENKINS, J.

MEMORANDUM BY JENKINS, J.:  **FILED DECEMBER 16, 2016**

R.S. ("Father") appeals from the custody order entered in the Chester County Court of Common Pleas, which granted a relocation petition in favor of L.M. ("Mother").  After careful review, we affirm.

The trial court set forth the relevant facts and procedural history of this appeal as follows:

> [Mother] and [Father] were married in 2005. They are the parents of three minor children: [N.S] (d.o.b. 1/…/09), [A.S] (d.o.b. 10/…/10), and [Ni.S.] (d.o.b. 12/…/12). The parties separated in 2014. On June 30, 2014, Mother filed a [c]omplaint for [c]ustody of the minor children. After a conciliation conference, a custody [o]rder was entered on December 10, 2014, granting the parties shared legal custody, primary physical custody to Mother, and partial physical custody to Father.

On October 8, 2015, Father filed a [p]etition to [m]odify [c]ustody, and on October 14, 2015, Father filed an [a]mended [p]etition to [m]odify [c]ustody.[1] On December 22, 2015, Mother served Father with a notice of proposed relocation. On January 13, 2016, Father filed a [c]ounter-[a]ffidavit regarding relocation. On February 5, 2016, Mother filed a [p]etition for [r]elocation.

The parties had a trial before [the trial court] on June 7 and June 8, 2016, at the conclusion of which I reviewed the factors set for[th] at 23 [Pa.C.S.] § 5337(h), and ultimately granted Mother's request to relocate with the children to Poolesville, Maryland.

Trial Court 1925(a) Opinion, filed August 26, 2016, at 1-2.

On June 17, 2016, the trial court granted Mother's petition for relocation.[2] On June 29, 2016, Father filed a notice of appeal and a concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925.

Father raises the following issues for our review:

1. Did the trial court err in failing to find that the proposed move would significantly impair the ability of the non-relocating party ("Father") to exercise his custody rights?

2. Did the trial court abuse its discretion and err in its conclusion when it failed to consider the impact the distance between Father and children would have on Father's future interaction with his children and the

_____

[1] The petition to modify custody and the amended petition to modify custody requested the court to add a provision requiring Mother to instruct their au pair agency or future agencies to place Father on the contact list for any notifications regarding the children. The parties entered into a stipulation for agreed order of custody on December 21, 2015 to resolve this matter in Father's favor.

[2] This order was docketed on June 22, 2016.

feasibility of preserving or developing the relationship between Father and the children at this young age[?]

3. Did the trial court err in failing to find that the evidence of the benefits to be gained by the move were adequate to meet the burden of showing the relocation would serve the best interests of the children?

4. Did the trial court abuse its discretion and err in its conclusion that Mother carried her burden of production on the issue of her ability to work remotely [where] Mother failed to produce any support for her position that the opportunity to work remotely with her current employer was limited to a move to Maryland; and not available to her at her current residence in Pennsylvania[?]

5. Did the trial court abuse its discretion and err in its conclusion that Mother's ability to work remotely from home in Maryland, five (5) days a week versus her current two (2) day a week arrangement at home in Pennsylvania, enhanced, significantly or otherwise, Mother's quality of life such that it warranted a fundamental change to Father's relationship with his three children[?]

6. Did the trial court abuse its discretion and err in not considering the difference in the educational opportunities afforded to the children in their current location in Pennsylvania versus the educational opportunities in Maryland[?]

7. Did the trial court abuse its discretion and err in its conclusion that the relocation would enhance Mother's general quality of life financially [where] Mother's move provides no greater employment opportunity and her argument that housing was more affordable was speculative[?]

8. Did the trial court abuse its discretion and err in permitting the move without requiring notice to Father of any specifics regarding her move; including but not limited to her specific housing arrangements[?]

9. Did the trial court abuse its discretion and err in concluding that the move provided Mother and children

with an emotional benefit and enhanced their quality of life [where a]ny emotional benefit to Mother of children from the move to Maryland is equally available to the children in Pennsylvania and does not warrant a fundamental change to the Father's relationship with his children[?]

Father's Brief at 13-15.

In his combined issues, Father argues the trial court erred in determining that Mother established that the relocation would serve the best interest of the children pursuant to 23 Pa.C.S. § 5337(h). In his first three issues, he claims the court erred in determining the move would not impair his ability to exercise his custodial rights. Father's Brief at 20. In his remaining issues, Father contends the trial court improperly concluded that Mother's move to Maryland would improve Mother and the children's financial quality of life. Father's Brief at 24-25. Father concludes the trial court's ruling that granted Mother's relocation petition exceeded its discretionary power. We disagree.

Our scope and standard of review of a custody order are as follows:

[T]he appellate court is not bound by the deductions or inferences made by the trial court from its findings of fact, nor must the reviewing court accept a finding that has no competent evidence to support it…. However, this broad scope of review does not vest in the reviewing court the duty or the privilege of making its own independent determination.... Thus, an appellate court is empowered to determine whether the trial court's incontrovertible factual findings support its factual conclusions, but it may not interfere with those conclusions unless they are unreasonable in view of the trial court's factual findings; and thus, represent a gross abuse of discretion.

\*　　\*　　\*

- 4 -

[O]n issues of credibility and weight of the evidence, we defer to the findings of the trial [court] who has had the opportunity to observe the proceedings and demeanor of the witnesses. The parties cannot dictate the amount of weight the trial court places on evidence. Rather, the paramount concern of the trial court is the best interest of the child. Appellate interference is unwarranted if the trial court's consideration of the best interest of the child was careful and thorough, and we are unable to find any abuse of discretion.

*A.V. v. S.T.*, 87 A.3 d 818, 820 (Pa.Super.2014) (quoting *R.M.G., Jr. v. F.M.G.*, 986 A.2d 1234, 1237 (Pa.Super.2009)).

Section 5328 provides an enumerated list of sixteen factors a trial court must consider in determining the best interests of a child when awarding any form of custody:

**§ 5328. Factors to consider when awarding custody**

**(a) Factors**.—In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S. § 5328(a).

Before granting a petition for relocation, the court additionally must consider the following relocation factors:

(1) The nature, quality, extent of involvement and duration of the child's relationship with the party proposing to relocate and with the nonrelocating party, siblings and other significant persons in the child's life.

(2) The age, developmental stage, needs of the child and the likely impact the relocation will have on the child's physical, educational and emotional development, taking into consideration any special needs of the child.

(3) The feasibility of preserving the relationship between the nonrelocating party and the child through suitable custody arrangements, considering the logistics and financial circumstances of the parties.

(4) The child's preference, taking into consideration the age and maturity of the child.

(5) Whether there is an established pattern of conduct of either party to promote or thwart the relationship of the child and the other party.

(6) Whether the relocation will enhance the general quality of life for the party seeking the relocation, including, but not limited to, financial or emotional benefit or educational opportunity.

(7) Whether the relocation will enhance the general quality of life for the child, including, but not limited to, financial or emotional benefit or educational opportunity.

(8) The reasons and motivation of each party for seeking or opposing the relocation.

(9) The present and past abuse committed by a party or member of the party's household and whether there is a continued risk of harm to the child or an abused party.

(10) Any other factor affecting the best interest of the child.

23 Pa.C.S. § 5337(h).

Additionally,

> (1) The party proposing the relocation has the burden of establishing that the relocation will serve the best interest of the child as shown under the factors set forth in subsection (h).

23 Pa.C.S. § 5337(i).

Further, the court must delineate the reasons for its decision to modify an existing custody order either in open court or in a written opinion or order. *A.V. v. S.T.*, 87 A.3d 818, 822 (Pa.Super.2014).

> In expressing the reasons for its decision, there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations. A court's explanation of reasons for its decision, which adequately addresses the relevant factors, complies with Section 5323(d).

*A.V.*, 87 A.3d at 822-23 (internal citations and quotation marks omitted).

Here, the record reflects that the court conducted a two day trial to address Mother's proposed relocation. After hearing testimony from seven witnesses, including Mother and Father, the court analyzed, in open court, the best interest of the child factors and the relocation factors enumerated in the Child Custody Act. *See* N.T., 6/8/16, at 487-489 (discussing best interest of the Child factors listed in 23 Pa.C.S. § 5328(a)(1)-(16)), 490-504 (discussing relocation factors listed in 23 Pa.C.S. § 5337(h)). The court then stated:

> [The] factors do militate in favor of granting the relocation. It is extremely difficult for me, but I believe that what I have heard is that it will be in the children's best interest to grant this relocation, that it will not significantly or even barely impair the amount of custodial time that [F]ather has with his children. That it is very possible that, if the

parties will work together, he will enjoy greater time with his children than he has up to this point.

N.T., 6/8/16, at 505.

The court further reasoned, in relevant part:

Mother intends to move to Poolesville, Maryland, a two-and-a-half hour drive from Father's residence in Newtown Square, Pennsylvania. The distance is approximately 150 miles. Mother proposed that the parties meet at a half-way point. Mother testified that if she is permitted to move with the children to Maryland, she will be flexible with the custody schedule if Father requests additional time or a change in the schedule….

Mother's willingness to drive the children half way to Father's residence and willingness to adjust the custodial periods to accommodate Father's schedule will lessen the inconvenience to Father of driving 150 miles during his custodial periods….

In determining whether the move to Maryland would significantly impact Father's ability to exercise his custodial rights, I considered the nature, quality, extent of involvement and duration of the children's relationship with each party. Mother testified that while the parties were together, she got the children up in the morning, gave them breakfast, drove [N.S.] to school, did all of the cooking and cleaning, attended all of the children's extracurricular activities, attended the children's medical and dental appointments and took the children to events during the holidays. She stated that Father "was more hands off" and "more passive."…

[Father] admitted that after the first custody conciliation conference he requested a reduction in his custodial time, eliminating the provision in the August 14, 2014 [t]emporary [o]rder that Father have physical custody of the children every other Wednesday from 8 a.m. to 8 p.m.…

Father testified that he wants to increase his time with the children because he now has a more flexible work

schedule. He does not have written confirmation from his employer agreeing to the flexible work schedule.…

Since the parties separated, the older children… attend tennis and swimming lessons at the YMCA on Saturday mornings. Mother stated that she takes the children … to the YMCA, stays for the lessons, and drives them home.… Mother stated that Father has never attended any of the children's Saturday activities at the YMCA.…

Mother testified that she takes the children to all of their doctor and dentist appointments. Since 2014, Father has attended only one doctor appointment for the children. Mother stated that Father attended one school activity per year (Donuts for Dad) and attended two graduation [c]eremonies.…

Mother testified that Father has taken one vacation day with the children since August of 2014. She wants both parties to have increased vacation time with the children.…

I found Mother's testimony credible regarding the extent of Father's interaction with the children and involvement in their daily routine.…

I understand that due to his work schedule, Father could not attend school activities and take the children to doctor and dentist appointments. However, he does not work on Saturdays and has failed to attend even one of the children's Saturday activities. If he truly wanted to participate in the children's sports activities, he would have gone to the YMCA on Saturdays and worked it out so that there was no confrontation with Mother. … Additionally, in the last two years, he could have taken a short vacation with the children if spending time with them was extremely important to him.

I found that the proposed move would not significantly impair Father's ability to exercise his custodial rights as he had many opportunities in the past to exercise his custodial rights and declined to take advantage of those opportunities.…

Mother testified that she presently works three days per week at the King of Prussia office, and she works two days per week from home in Devon. She asked to work full time from her home, but was denied. Mother stated that if she moves to Maryland, she can work from home five days per week. It would be a lateral move; her rate of pay would remain the same. Mother stated that she will have more time to participate in afternoon activities with the children if she relocates and works from home five days per week….

Both parties failed to produce documentation from their employers regarding their proposed new work schedules and arrangements. Thus, I considered the testimony and made credibility determinations accordingly….

I considered the evidence and found that any appreciable difference between the school districts is not material…. Thus, while one district may be ranked higher than another, I considered the ages, developmental stages, needs of the children and likely impact the relocation will have on the children's physical, educational and emotional development, and found that relocating to Maryland would not have a detrimental impact on the children's physical, educational and emotional development….

Mother currently rents a three bedroom apartment for $1926 per month. She stated that if she moves to Maryland, she can buy a four bedroom townhouse with two -and-a-half bathrooms. "We would be able to save almost $600 a month every month buying a home in Poolesville instead of renting in Devon. From that alone I would be able to save up for their college." (N.T. 6/7/16 at 93-94). Mother testified that her monthly mortgage would be $1248 plus utilities.

It was clear that Mother had thoroughly analyzed the respective housing costs and her financial capabilities…. I credited the concept that the ability to purchase a home (as opposed to rent) creates stability for her and for the children….

Mother has family and friends living in Maryland. She testified that if she moves to Maryland, she will reside nineteen miles from her parents and fourteen miles from

her brother and his fiancée. Mother stated [that] the children have a close relationship with her parents. She stated that her brother, Lij, is her children's best friend…. In addition to her parents and brother, Mother has cousins and family friends in Maryland.

Father testified that the children have a close relationship with his parents in Pennsylvania. The children have had birthday parties at Father's parents' house.

The emotional benefit to the children of being in close physical proximity to *both sets* of grandparents cannot be overstated. Father's parents will have the opportunity to see the children during his weekend custodial periods, as they do now. Mother stated that if she and the children moved to Maryland, Father's time with the children during the school year will increase because he will have them all weekend from Friday evening to Sunday evening….

I considered all of the factors in Subsection 5337(h), including (5) the established pattern of conduct of either party to promote or thwart the relationship of the child and the other party. This category weighed heavily against Father.

Mother testified that [N.S.] told her that Father told the children that if they moved to Maryland they would never see him again. Father denied that he made that statement to the children. Mother testified that Father does not allow the children to refer to her as "Mommy" in his presence. They must call her "the other person." Father denied this allegation. Mother stated that Father, in front of the children, has called her short, fat and ugly.… Father denied that he commented on Mother's appearance or made any derogatory remarks about Mother in front of the children….

Mother stated that during Father's custodial times from 2014 until May 2016, Father did not permit the children to speak to her by phone….

Father denied that he prevented Mother from speaking to the children by phone during his custodial times….

Both parties claim harassment from the other party….

The friction between the parties was not the overriding factor in my decision to grant relocation. Mother's ability to work from home five days per week while the children are young will enhance the quality of life for Mother and the children. At the same time, relocation to Maryland will not significantly impair Father's relationship with the children because he will have added custodial time with the children, including full weekends, assuming he takes advantage of those opportunities. Father's relationship with the children will not be endangered in any way shape or form by the relocation to Maryland; they will continue to receive nurturing from him and life instruction from him.

I considered all of the evidence and testimony and determined that Mother met her burden of proving that relocation to Maryland would serve the best interests of the children. *See Anderson v. McVay*, 743 A.2d 472 (Pa.Super.1999) (trial court did not err in allowing mother and children to relocate to North Carolina where relocation would substantially improve the quality of life for mother and the children, mother would be flexible in making visitation arrangements, and the visitation arrangement would allow Father more total time with the children than he had before mother's relocation).

Trial Court Pa.R.A.P. 1925(a) Opinion, filed August 26, 2016, at 4-18 (most citations to the record omitted).

The trial court's factual findings are supported by the record and support its factual conclusions. The trial court's consideration of the best interest of the children was careful and thorough, and we see no abuse of discretion.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/16/2016