631 A.2d 204

**Jeffrey HOCKENBERRY**

v.

**Cheryl Lynn THOMPSON, Appellant.**

Superior Court of Pennsylvania.

Submitted June 21, 1993.

Filed Sept. 20, 1993.

Mark S. Weaver, Clearfield, for appellant.

Jeffrey Hockenberry, appellant, pro se.

Before DEL SOLE, BECK and HESTER, JJ.

HESTER, Judge.

Cheryl Lynn Thompson, Mother, appeals from the order of the Clearfield County Court of Common Pleas granting appellee-Father, Jeffrey Hockenberry, primary physical custody of the parties' daughter, Vanessa. For the reasons which follow, we reverse.

Vanessa Hockenberry was born on July 16, 1988. Mother and Father lived together but never married. Mother has two other children by different fathers: Larissa, born in August, 1987, and Crystal, born in the spring of 1992. Mother testified that she left Father in October, 1990, and took Larissa and Vanessa with her. Father, who knew where she had moved, never contacted her about his child. Finally, in February, 1991, Mother contacted Father, who had left Pennsylvania and was living in Virginia with his sister, and asked if he would like to see his daughter. Both Larissa and Vanessa visited Father in Virginia and again in Pennsylvania after Father had moved back to his mother's home.

On November 14, 1991, Father forcibly removed Vanessa from Mother's home and denied her all access to the child. Mother testified that she called the police, who refused to intervene. She also testified that she sought legal representation but did not have the necessary funds to pay the retainer fee.[1] One week later, Father filed for custody of Vanessa. Vanessa has been residing in the home of her paternal grandmother since Father removed her from Mother's home. Father and Grandmother have denied Mother all access to Vanessa since the child forcibly was removed from Mother's home.

A custody hearing was held July 15, 1992. Father, despite proper notice, did not appear at the custody hearing. The attorney who had prepared the custody petition for Father

1. Mother was represented at the hearing and on appeal by Keystone Legal Services.

testified that she had been unable to locate Father, and she requested to withdraw her representation of him. The court denied that motion.

In the middle of the custody hearing, the common pleas court telephoned the paternal grandmother and asked her to come to the hearing with Vanessa. Notes of Testimony ("N.T."), 7/15/92, at 29. The trial court conducted the direct examination of Grandmother because counsel for Father asserted that Father was her client, not Grandmother. Mother's counsel conducted cross-examination. Grandmother testified that she did not know Father's whereabouts and had not seen him for two to three weeks. *Id.* at 31, 34. Grandmother confirmed that Father indeed knew about the hearing. Grandmother also testified that her son had never cared for Vanessa, was currently unable to care for her, and she had been caring for the child and was willing to continue to do so. Grandmother acknowledged that at the time of the hearing, Father was wanted on outstanding bench warrants for parole violations in Bucks County.

Notwithstanding the fact that Father never appeared at the custody hearing, and that the uncontroverted evidence established that he was unable to care for Vanessa, the trial court awarded primary physical custody of the child to Father "to take place in the residence of the paternal grandmother...." Mother argues that the trial court, in effect, awarded de facto custody to the grandmother, a non-party to the action. This is the first of appellant's sundry arguments with which we agree.

It is clear that in matters of custody and visitation, the ultimate consideration of the court is a determination of what is in the best interests of the child. Such a determination, made on a case-by-case basis, must be premised upon consideration of "all factors which legitimately have an effect upon the child's physical, intellectual, moral and spiritual well-being." *Lee v. Fontine*, 406 Pa.Super. 487, 488, 594 A.2d 724, 725 (1991), citing *Zummo v. Zummo*, 394 Pa.Super. 30, 574 A.2d 1130 (1990). In *Stolarick v. Novak*, 401 Pa.Super. 171, 584 A.2d 1034 (1991), we reiterated our scope of review as

defined in *Mumma v. Mumma*, 380 Pa.Super. 18, 21, 550 A.2d 1341, 1343 (1988), as follows:

> In reviewing a custody order, we are not bound by findings of fact made by the trial court which are unsupported in the record, nor are we bound by the court's inferences drawn from the facts. *Commonwealth ex rel. Spriggs v. Carson*, 470 Pa. 290, 294–95, 368 A.2d 635, 637 (1977). However, on issues of credibility and weight of the evidence, we defer to the findings of the trial judge, who has had the opportunity to observe the proceedings and the demeanor of the witnesses. *Id.* at 295, 368 A.2d at 637. Only where we find that the custody order is "manifestly unreasonable as shown by the evidence of record ..." will an appellate court interfere with the trial court's determination.

*See also Karis v. Karis*, 518 Pa. 601, 544 A.2d 1328 (1988); *Andrews v. Andrews*, 411 Pa.Super. 286, 601 A.2d 352 (1991).

■ We addressed the issue of de facto custody to a nonparty in *Michael T.L. v. Marilyn J.L.*, 363 Pa.Super. 42, 525 A.2d 414 (1987). The trial court, while obviously aware of this case, misapplied it. We made reference in *Michael T.L.* to *Moorman v. Tingle*, 320 Pa.Super. 348, 467 A.2d 359 (1983), which held that a parent's prima facie right to custody will be forfeited only if there are convincing reasons that the child's best interest will be served by an award to a third party. We stated:

> Thus, even before the proceedings start, the evidentiary scale is tipped, and tipped hard, to the parents['] side. What the judge must do, therefore, is first, hear all evidence relevant to the child's best interest, and then decide whether the evidence on behalf of the third party is weighty enough to bring the scale up to even, and down on the third party's side.

*Michael T.L. v. Marilyn J.L., supra.* We held in *Michael T.L.* that "[t]his prima facie directive has not been overcome. It is error which is compounded by the fact that **the paternal grandmother is not a party to this action.**" *Id.*, 363 Pa.Super. at 53, 525 A.2d at 420 (emphasis added).

In the instant case, there is not an iota of evidence that Mother is incapable of caring for Vanessa. It is clear that the trial court was disturbed by the fact that Mother had borne three children to three different men without the benefit of marriage. That fact, however, does not bear scrutiny except insofar as it adversely affects the best interest of Vanessa. There was no evidence that it has done so. Conversely, the uncontroverted evidence established that Father was unwilling and unable to care for Vanessa. This testimony was offered not only by Mother, but also by Father's own mother. It is clear that the award of custody to Father constituted an abuse of discretion which must be reversed.

The trial court further erred in entering an order which results in the separation of siblings. We recently addressed this issue, specifically as it relates to half-siblings:

Absent compelling reasons to the contrary, it is the policy of this Commonwealth that siblings should be raised together whenever possible. *Pilon v. Pilon,* 342 Pa.Super. 52, 492 A.2d 59 (1985). "This factor is not diluted by the fact that the children involved are half brothers and sisters." *In re Davis,* 502 Pa. 110, 124, 465 A.2d 614, 621 (1983). While this factor cannot be elevated automatically above all other factors, *it must be weighed in conjunction with the others. Id.* (Emphasis added.) "Good reasons" are not necessarily "compelling" reasons for disrupting the integrity of a family unit. *Pilon v. Pilon, supra.* "In defining the phrase 'compelling reasons' this court has said that the evidence must indicate that is was 'necessary' to separate the children, and the evidence was 'forceful' in this regard." *Cyran v. Cyran,* 389 Pa.Super. 128, 132, 566 A.2d 878, 880 (1989), citing *Albright v. Commonwealth ex rel. Fetters,* 491 Pa. 320, 421 A.2d 157 (1980). Absent compelling reasons, "the children should be raised together in one household, for this permits the continuity and stability necessary for a young child's development." *Pilon v. Pilon, supra,* 342 Pa.Super. at 56, 492 A.2d at 60.

*Wiskoski v. Wiskoski,* 427 Pa.Super. 531, ——, 629 A.2d 996, 998.

It is clear that Larissa and Vanessa were raised as sisters. The girls were only fourteen months apart in age. In fact, when Vanessa visited with her father and paternal aunt in Virginia and Pennsylvania, Larissa also visited. N.T., 7/15/92, at 46–47. There were *no* reasons, let alone compelling reasons, offered to support separating these siblings. Thus, the trial court erroneously failed to consider this doctrine of "family unity."

For the foregoing reasons, we are constrained to conclude that the trial court erred in awarding de facto custody of Vanessa Hockenberry to her grandmother. On remand, the trial court will enter an order awarding primary physical custody of Vanessa to appellant and if Father can be found, determine whether visitation with him is in the child's best interest. The matter of support should also be considered.

Order reversed and remanded for entry of an order consistent with this opinion. Jurisdiction relinquished.