657 A.2d 956

**Charles J. MYERS, Appellant,**

v.

**Jamie M. DiDOMENICO.**

Superior Court of Pennsylvania.

Argued Jan. 11, 1995.

Filed April 10, 1995.

342

Terressa E. George, Altoona, for appellant.

Richard A. Behrens, Duncansville, for appellee.

Ilissa Zimmerman, Duncansville, Guardian Ad Litem, participating party.

Before CAVANAUGH, CIRILLO and SAYLOR, JJ.

CIRILLO, Judge:

This is an appeal from an order of the Court of Common Pleas of Blair County wherein the court declined to transfer physical custody from the mother to the father and modify the custody order dated December 19, 1991. We reverse.

Plaintiff/Appellant Charles J. Myers ("Father") and Defendant/Appellee Jamie M. DiDomenico ("Mother") were married on June 10, 1978. During the course of their marriage, two children were born; Amie Marie Myers was born on July 6, 1979, and Kurt Joseph Myers was born January 19, 1982. As a result of marital difficulties, Mother and Father separated in 1984, when the children were ages five and two, respectively. After separation, the children remained in the primary physical custody of Mother. Initially, Mother and the children lived with her parents. The parties divorced in 1985 and Mother married Gary DiDomenico in 1988. The children have resided with their mother, stepfather and stepbrother since Mother's remarriage in 1988.

Via a Consent Agreement dated May 1, 1985, Mother and Father agreed to share legal custody of the children, with primary physical custody to be vested in Mother. Subsequent thereto, visitation with Father had been modified by agreement of the parties, but primary physical custody remained with Mother.

On October 15, 1991, Father filed a complaint to have primary physical custody of the children transferred to him. Father's complaint was precipitated primarily by the children's desire to live with their father. Father alleged that the best interests of the children would be best served by having primary physical custody transferred to him.

Pursuant to the Master's recommendation, an order was entered by the court on December 19, 1991, which continued shared legal custody of the children with primary physical custody to remain with Mother. Father was to have periods of partial custody every other weekend, every Tuesday and Thursday from 3:00 p.m. to 8:30 p.m., and alternate two-week periods in the summer, as well as extensive holiday visits.

Father then filed an appeal from the December 19th order and requested an evidentiary hearing. An evidentiary hearing was conducted before the Honorable Jolene Grubb Kopriva on September 27–28, 1993, which culminated in an order of the court, dated September 29, 1993, wherein the court continued

primary physical custody in Mother. Father appeals from the September 29th order and raises one issue for our review:

Whether the trial court's determination of custody in the mother was not supported by the evidence, contrary to the weight of the evidence and contrary to the legal principles applicable to such matters?

The standard for reviewing a child custody order is well-settled:

The scope of review of an appellate court reviewing a child custody order is of the broadest type; the appellate court is not bound by the deductions or inferences made by the trial court from its findings of fact, nor must the reviewing court accept a finding that has no competent evidence to support it. However, this broad scope of review does not vest in the reviewing court the duty or the privilege of making its own independent determination. Thus, an appellate court is empowered to determine whether the trial court's incontrovertible factual findings support its factual conclusions, but it may not interfere with those conclusions unless they are unreasonable in view of the trial court's factual findings; and thus, represent a gross abuse of discretion.

*McMillen v. McMillen,* 529 Pa. 198, 202, 602 A.2d 845, 847 (1992) (citations omitted).

In addition, we recognize that this court has held that "[o]nly where we find that the custody order is 'manifestly unreasonable as shown by the evidence of record . . .' will an appellate court interfere with the trial court's determination." *Hockenberry v. Thompson,* 428 Pa.Super. 403, 407, 631 A.2d 204, 205–06 (1993) (quoting *Mumma v. Mumma,* 380 Pa.Super. 18, 21, 550 A.2d 1341, 1343 (1988), *appeal denied,* 524 Pa. 629, 574 A.2d 70 (1989)). Despite this stringent standard, we find that the situation presently before this court is one of those cases where we must interfere with the trial court's custody order as the trial court's factual conclusions are manifestly unreasonable in view of the court's factual findings and represent a gross abuse of discretion. *Hockenberry, supra,* 428 Pa.Super. 403, 631 A.2d 204; *McMillen, supra,* 529 Pa. 198, 602 A.2d 845.

 The courts of this Commonwealth have consistently held that the ultimate consideration in custody matters is to determine that which is in the best interests of the child and that such determinations must be made on a case-by-case basis. *Moore v. Moore*, 535 Pa. 18, 634 A.2d 163 (1993); *Hockenberry, supra,* 428 Pa.Super. 403, 631 A.2d 204; *McMillen, supra,* 529 Pa. 198, 602 A.2d 845. Accordingly, the best interests of Amie and Kurt are the focus of this decision.

In this case, the record reflects that both Amie and Kurt have been in the primary physical custody of Mother since Mother and Father separated in 1984. It is also true, however, that although primary custody remained with Mother, Father was and is a significant caretaker for both children and has contributed greatly as a loving, nurturing parent in the formative years of their lives. Thus, Father has been a caring, supportive parent to the children despite the fact that he has never had primary custody of the children following the separation with Mother. As a result, Father sought in 1991, and presently seeks, the opportunity to have what Mother has enjoyed since their separation, that is, primary physical custody. Our review of the record reveals the following circumstances surrounding this serious family issue.

Both children have expressed their desire to have an opportunity to live with their Father. The children communicated these feelings when this issue was before the Master in the fall of 1991 when Amie was twelve years old and Kurt was only a few months away from his tenth birthday. More importantly, Amie and Kurt expressed these feelings again on September 27, 1993 before Judge Kopriva during an in-chambers interview, when Amie and Kurt were ages fourteen and eleven, respectively. Amie clearly conveyed the reasons for her feelings at the in-chambers interview before Judge Kopriva. Amie stated:

[W]ell I want to live with dad because, I don't know, we've lived with mom, my mom for nine years and I'm going to be going off to college in four and I think that when you have two parents and you love them both and you want to live with them both so uh I think I should get a chance to live with him too ... and it's gonna hurt my relationship with

him if we don't, like, cause most kids have a chance to live with both parents [ ], but we never really had that chance.

Kurt essentially expressed the same thoughts when questioned by the court as to where he wanted to live.

Although both children stated their feelings as best they could before Judge Kopriva, Amie was more clear as to why she wanted to now live with her father. Nonetheless, both children did express their desire to have an opportunity to live with their father after having lived with their mother since 1984.

 It is important to note that while the express wishes of a child are not controlling in a custody decision, those wishes do constitute an important factor that must be carefully considered in determining the child's best interests. *McMillen*, 529 Pa. at 203, 602 A.2d at 847. It is also true that the child's preference must be based on good reasons and the child's maturity and intelligence must be taken into account. *Id.* Further, the weight to be attributed to the child's testimony can best be determined by the judge before whom the child appears. *Id.* It must also be noted, however, that the Pennsylvania Supreme Court in *McMillen* decided that where the households of both parents were equally suitable, the child's preference in that case to live with his father "could not but tip the evidentiary scale in favor of his father." [1] *Id.* at 204, 602 A.2d at 848.

 Therefore, even considering Judge Kopriva's decision to not give significant weight to Amie's and Kurt's desires to live with their father, such a decision should not have affected the ultimate custody determination in light of *McMillen* since the record in this case shows that both households are equally suitable. In other words, since Mother's and Father's respective households constitute equally suitable environments with-

1. The trial court did not attribute much weight to the children's preferences and essentially discredited their reasons underlying such preferences. The trial court's conclusion is inconsistent with the fact that, in repeated discussions over time as to where the children wanted to live, they steadfastly maintained that it was only fair for them to have a chance to live with Father as well as Mother.

in which the children can be properly raised, then the children's preference to live with Father could not help but tip the evidentiary scale in favor of Father. *McMillen, supra,* 529 Pa. 198, 602 A.2d 845.

The trial court specifically found that there were many factors that were equal between Mother and Father. The trial court also made factual findings that both parents were equally involved in the child rearing process; both parents love their children; both parents have a good relationship with their children; and that both homes are equally suited for the rearing of the children. Moreover, Mother admitted at the hearing that Father has been concerned about their children throughout their upbringing, that Father and children share a good relationship, and that Father has a nice home where the children would be raised properly. In addition, the court appointed expert, Nancy Baker, Ph.D., as well as Father's expert Derald W. Stump, Ph.D., also determined that both Mother and Father were supportive, nurturing and responsible parents.

Despite this evidence established in the record that both parents are equally capable of caring for the children, and that both homes are equally suitable, the trial court chose to ignore the Supreme Court's pronouncement in *McMillen* that, under equal circumstances, the child's preference should tip the scale in favor of the "preferred" parent. We realize the sensitive nature of the issue at hand and are in no way stating that a child's preference is always the correct choice when determining custody, nor are we saying that one parent's years of caring, nurturing and overall parenting are to be disregarded. Rather, we are attempting to determine whether the best interests of Amie and Kurt will be best served by allowing them the opportunity to live with their Father during their formative years after having had the opportunity to live with their mother.

This court will not uphold a custody order which is manifestly unreasonable as shown by the evidence of record. *Hockenberry, supra,* 428 Pa.Super. 403, 631 A.2d 204. The trial court discusses in its opinion how both parents are to be blamed for poor communication. In its summary, however,

the trial court apparently concludes that Father is the party which is more at fault and states that the only need of the children which is lacking is "their father's in-ability to respect their mother's thinking.... The problem in this case is not custody, it is parental communication and putting individual needs and desires aside toward a more common goal of looking at [the] family as a whole...."

Although we agree with the trial court that the record evidences a severe communication problem between Mother and Father, the evidence of record does not support the trial court's factual conclusion that Father is more at fault for this problem. The lack of communication and adverse effect of this poor communication falls to both sides equally, as reflected in the record. For example, the trial court places much significance on the fact that Father communicated with Mother by sending messages through the children. This analysis, however, is unfairly skewed as the record shows that both parents utilized the children in sending messages to one another.[2] In fact, the record shows that Mother's position in this case has been unreasonable and inflexible at times such that she does not want the children to share with Father those special experiences that come with living together, which Mother and the children have enjoyed since the separation occurred in 1984. Mother testified during the hearing that she "[did]n't want somebody that's not their mother to be raising [Amie and Kurt]."[3]

**2.** We also acknowledge the position of the Guardian Ad Litem, Ilissa Zimmerman, that, in all aspects, these parents are equally capable of raising their children. Significantly, the Guardian Ad Litem also pointed out Mother's inflexibility when it came to any changes in the visitation schedule and that Mother felt that Father receives "maximum visitation." The Guardian concluded by stating her opinion that "[b]oth [parents] should experience the joy and frustration of being the responsible and custodial parent." (Brief of Guardian Ad Litem, p. 7).

**3.** Additional support can be found in the record establishing Mother's lack of flexibility when it comes to allowing the children the opportunity to live with Father. Father testified that Mother has said to him, with regard to his access to the children and, consequently, their access to him, that "you're lucky you have what you have." This testimony is supported by Mother's testimony at trial where she stated, *inter alia,*

Most importantly, though, we do not agree with the trial court's conclusion that "[t]he problem in this case is not custody." While we recognize that communication between the parents is a valid concern, the key issue in this case most certainly is custody and, correspondingly, the best interests of these children. Determining what constitutes the best interests of Amie and Kurt requires a determination as to whether they should also have the opportunity to live with their Father.

The record also shows that all parties involved agree that the children are extremely mature, intelligent and have expressed themselves very well. These are all factors to be considered with care. *McMillen, supra,* 529 Pa. 198, 602 A.2d 845. Both Amie and Kurt expressed their desire to live with their Father throughout these proceedings. Nevertheless, the court-appointed expert, Dr. Baker, "interpreted" that the children did not really mean what they said. Dr. Baker concluded that the reason why the children should remain with their mother is that she believed Mother would be the best parent to foster a relationship with the non-custodial parent. The children, however, testified and conveyed that they "sensed and felt" underlying hostility and hatred, in their mother, toward their father. In fact, Mother admitted at trial that the children probably sense her hostility towards Father. Moreover, testimony was presented at the hearing which suggested that Mother has excluded Father at least once from events involving the children. For example, when Amie received her First Communion she was "represented" at the church ceremony by Mother and Amie's stepfather, rather than Mother and Father. Father testified that he felt that he was missing

that "I don't know what the compromise could be since he [Father] has really maximum visitation right now."

We are quick to point out that by relating these facts this court is not attempting to focus on Mother's imperfections, indeed, no parent is perfect. Our reference to the record is necessary, however, to point out that the trial court's factual conclusion that Father is more responsible for his and Mother's communication problems is not supported by the record.

opportunities to participate in the children's activities at school because Mother did not always convey relevant information to him.

Dr. Baker's conclusion, therefore, that Mother would be the best parent to foster a relationship with the non-custodial parent is not supported by the record. Both Dr. Baker and Dr. Stump, however, did agree that Father is an excellent parent. Dr. Stump testified that it would be beneficial for Amie and Kurt to live with Father. Furthermore, neither doctor cited any basis or reason, other than that discussed above by Dr. Baker, for the contention that placing primary custody of the children with Father would not be in the best interests of these children.

Thus, Dr. Baker's conclusion that custody should remain with Mother because she would better facilitate the relationship with the noncustodial parent is not supported by the record. Consequently, the trial court's reliance upon Dr. Baker's testimony is, to a certain extent, unsupported by the record. Furthermore, as discussed herein, the trial court's other factual conclusions are unreasonable in view of its factual findings and, thus, represent a gross abuse of discretion. *McMillen, supra,* 529 Pa. 198, 602 A.2d 845. Accordingly, the custody order declining to transfer primary physical custody from Mother to Father is manifestly unreasonable as shown by the evidence of record. *Hockenberry, supra,* 428 Pa.Super. 403, 631 A.2d 204.

For these reasons, and in view of the children's preference, we conclude that Amie and Kurt should be able to experience living with Father just as they were able to experience living with Mother. Such an outcome would be fair, and, most importantly, would be in the best interests of Amie and Kurt. It is without question that when two parents care for and love their children in the way that the parents do in this case, and when both households are equally suitable environments within which to raise children, it is in the best interests of the children to allow them the experience of having lived with both parents. Additional support for this conclusion can be found in *McMillen, supra,* 529 Pa. 198, 602 A.2d 845, as the facts in that case are quite similar to those presently before this court.

Order reversed and case remanded for modification of the custody order and a determination of Mother's visitation rights, with such action to be consistent with this opinion.