**Mark E. FERDINAND, Appellee,**

v.

**Mary F. FERDINAND n/k/a Mary Clark, Appellant.**

**Mary F. Gerhard n/k/a Mary Clark, Appellant,**

v.

**Daniel F. Gerhard, Appellee.**

Superior Court of Pennsylvania.

Argued July 25, 2000.

Filed Oct. 20, 2000.

Reargument Denied Dec. 22, 2000.

Cynthia S. Ray, Weatherly, for appellant.

Cynthia A. Dyrda, Lehighton, for Daniel Gerhard, appellee.

Lawrence M. Klemow, Hazleton, for Mark Ferdinand, appellee.

BEFORE: JOYCE, LALLY–GREEN and BECK, JJ.

JOYCE, J.:

¶ 1 Appellant, Mary Clark (Mother), appeals from the final order denying her petition to relocate with her children and changing the primary physical custody of her children to the children's respective biological fathers, Dan Gerhard (Dan) and Mark Ferdinand (Mark).[1] For the reasons set forth below, we reverse that order and remand for entry of an order consistent with this opinion. Before addressing Mother's claims, we will briefly recount the pertinent facts of this case.

¶ 2 Mother and Dan were married in 1984. They separated and divorced in 1988. One child was born during their marriage.[2] Pursuant to a family settlement agreement, Mother and Dan exercised joint legal custody of Doug and Mother was granted primary physical custody with Dan having partial custody.

---

1. The Guardian *Ad Litem* in this case has filed an affidavit in response to Appellant's brief. Appellant filed a motion to strike this affidavit. We note that in Appellee's answer to this motion, it is admitted that the Guardian never entered an appearance even though he was served with all relevant paperwork. Additionally, this affidavit does not conform with the Pa.R.A.P., is not in support of any petition or motion, and is not attached to any responsive brief. Furthermore, as Appellee admits, there was evidence of record, which the affidavit merely duplicates. Accordingly, the motion to strike the affidavit of the Guardian *Ad Litem* is granted.

2. Douglas (Doug) was born October 20, 1986. Doug turns fourteen (14) on October 20, 2000.

¶ 3 In 1992, Mother married Mark. A child was born during this union.[3] Mother and Mark divorced in December of 1998. By order dated January 22, 1998, they shared physical and legal custody of Jessica on a four-week cycle.

¶ 4 After accepting a job offer out of state, Mother sought to modify the custody arrangements to allow her to relocate to Michigan with her children. Following a hearing on the matter, the court ordered that if Mother did relocate, primary physical custody would transfer to the respective fathers.[4] Mother withdrew her petition, returned to Pennsylvania and the original custody arrangements were reinstated.

¶ 5 On February 14, 1999, while still residing in Pennsylvania, Mother and Ken Clark (Ken) became engaged. The couple selected and closed on a home in April of 1999. Mother accepted employment set to begin August 1, 1999. Mother and Ken married August 17, 1999.

¶ 6 In May of 1999, Mother again petitioned for permission to relocate to Michigan with her children. Dan and Mark filed separate petitions seeking to gain primary physical custody of Doug and Jessica respectively.[5] Following hearings on these petitions, the trial court awarded primary physical custody to the children's respective fathers, thereby denying Mother's petition to relocate to Michigan with her children. Mother appeals that order.

¶ 7 Mother presents the following issues for our review: (1) whether the trial court erred by misapplying the standard set forth in Gruber v. Gruber, 400 Pa.Super. 174, 583 A.2d 434 (1990); (2) whether the trial court erred by failing to consider that Mother had been the primary caretaker of both children; (3) whether the trial court

erred by separating the siblings; (4) whether the trial court erred in allowing and using the testimony of Dr. Finn and allocating her fees; (5) whether the trial court erred by failing to limit the testimony to events after October of 1998; (6) whether the trial court erred in its use of the Guardian Ad Litem; (7) whether Mother was prejudiced by the trial court taking almost a year to resolve this matter; and (8) whether the trial court erred by transferring venue in this case.

¶ 8 In addressing these issues, we note that:

> [W]e are not bound by deductions and inferences drawn by the trial court from the facts found, nor are we required to accept findings which are wholly without support in the record. On the other hand, our broad scope of review does not authorize us to nullify the fact-finding function of the trial court in order to substitute our judgment for that of the trial court. Rather, we are bound by findings supported by the record, and may reject conclusions drawn by the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

Thomas v. Thomas, 739 A.2d 206, 209 (Pa.Super.1999) (en banc). We further recognize that:

> The paramount concern in a child custody case is the best interests of the child. A determination of the best interests of the child is based on consideration of all factors which legitimately have effect upon the child's physical, intellectual, moral and spiritual well-being. The court in a custody action has the obligation to consider all relevant factors that could affect the child's well-being.

3. Jessica was born September 8, 1994. Jessica is now six (6) years old.

4. A relocation evaluation concluded that Mother's motives and non-economic benefits for relocating were insufficient to allow Mother to relocate with the children.

5. Because of the multiple and different competing interests of the parties, we consider the potential outcomes as they affect all parties simultaneously.

*E.A.L. v. L.J.W.*, 443 Pa.Super. 573, 662 A.2d 1109, 1112 (1995) (citations omitted).

¶9 Mother argues that the trial court erred in failing to conduct a proper *Gruber* analysis. As recognized by this Court, the three-prong test relevant to the determination of whether a custodial parent may relocate a geographical distance away from a non-custodial parent includes:

(1) [T]he potential advantages of the proposed move and the likelihood that the move would substantially improve the quality of life for the custodial parent and the children and is not the result of a momentary whim on the part of the custodial parent;

(2) [T]he integrity of the motives of both the custodial and non-custodial parent in either seeking the move or seeking to prevent it; and

(3) [T]he availability of realistic substitute arrangements which will adequately foster an ongoing relationship between the child and the non-custodial parent.

*Gruber*, 583 A.2d at 439.[6] Furthermore, these factors must be applied under the umbrella of the aforementioned ultimate objective of determining the best interest of the child. *Anderson v. McVay*, 743 A.2d 472, 474 (Pa.Super.1999). To be permitted to retain custody, the parent seeking to relocate has the burden of proving that each of the above prongs has been met.

¶10 Our Court has held that when attempting to satisfy the first *Gruber* prong, the trial court must consider more than just the economic advantages accruing to the relocating party. *Gruber*, 583

A.2d at 439. That is, the courts cannot ignore or discount non-economic factors that are likely to enhance the well-being and general happiness of the relocating parent and children.[7] *Id.* The trial court in the present case, after considering both economic and non-economic factors, determined that Mother failed to establish the first prong of *Gruber*. We do not believe that the facts of record support such a finding.

¶11 The trial court found that Mother's improved economic situation would improve the quality of her life and that of her family.[8] Trial Court Opinion, filed 6/16/00, at 6. Additionally, the trial court found that Mother's relocation was both well planned and not based upon some momentary whim. However, the trial court concluded that the non-economic factors weighed against allowing relocation.

¶12 The trial court determined that because most of the parties' extended family members are in Pennsylvania, this provided an advantage over Michigan, with only Ken's extended family members. Furthermore, the court found that the children already had established relationships with their communities, schools, and fathers. The court essentially found that as these relationships had already cemented in Pennsylvania, the best interest of the children is achieved by maintaining the status quo. Though discussed elsewhere, noticeably missing from this part of the court's analysis is a discussion of the non-economic impact of separating brother and sister.

¶13 The order in question will effectively result in the separation of Doug and Jessica. Absent compelling reasons to the contrary, the policy of this Common-

---

**6.** *Gruber* applies not only to situations where one parent is the established primary custodian, but also those scenarios in which both parents share custody and one parent seeks to relocate. *See Thomas v. Thomas,* 739 A.2d 206 (Pa.Super.1999) (*en banc* ).

**7.** Indeed, in a shared custody case, such as the arrangement between Mother and Mark, it is necessary for the court to analyze the

non-economic benefits flowing from the proposed move in order to determine if the children's lives will substantially improve because of the move. *Thomas v. Thomas,* 739 A.2d 206 (Pa.Super.1999) (*en banc* ).

**8.** The court found both Mark and Dan had sufficient incomes to provide for and care for their respective children in the event they were primary custodians.

wealth has been that siblings should be raised together whenever possible. *Hockenberry v. Thompson*, 428 Pa.Super. 403, 631 A.2d 204, 205 (1993). The threshold for this standard is that the evidence must indicate it was necessary to separate the children and the evidence was forceful in this regard. *Cyran v. Cyran*, 389 Pa.Super. 128, 566 A.2d 878, 880 (1989). Without these compelling reasons, the children should be raised together in one household, which permits the continuity and stability necessary for a young child's development. *Pilon v. Pilon*, 342 Pa.Super. 52, 492 A.2d 59, 60 (1985).

¶ 14 While the trial court found a strong sibling relationship, and admits that the ideal situation would be to raise the children together, the court seems to minimize this by stating Douglas is a young teenager moving into his dating and sporting years. He is also moving toward independence. Jessica is just starting to proceed into the primacy years and the start of schooling. Trial Court Opinion, filed 6/16/00, at 17. The court found that presented with these circumstances and the close proximity between the homes of the two fathers, that compelling reasons existed for separating this brother and sister. *Id.* at 18. Accordingly, the trial court ruled that primary physical custody should be placed with the respective fathers, conditioned upon the children maintaining frequent and meaningful contact with each other. *Id.* at 20.

¶ 15 The record belies the fact that frequent contact between the siblings will occur or is even possible. Dan said that Doug and Jessica pretty much get to see each other once a week. N.T. Custody Hearing, 11/15–11/16/99, 12/8–12/9, 12/13/99, 2/7 and 2/10/00, at 640–641. Dan stated that the custody arrangement he sought would separate Doug and Jessica most of the week and that while they try to see each other once a week, this did not always occur. *Id.* at 687 and 689. Additionally, he said that if the respective fathers were awarded primary custody, the

brother and sister would never get to see each other as much as they should. *Id.* Finally and remarkably, Dan testified that given Doug's age and presumably his participation in sports, it would be better if Doug saw less of his sister and more of his father. *Id.* at 706–707.

¶ 16 Doug confirmed Dan's testimony by explaining that he gets to see his sister maybe once a week. *Id.* at 1374. Some of those occasions are when Jessica goes to watch Doug play basketball. *Id.* at 1375. Doug said that when that occurs, he really does not have too much contact with Jessica. *Id.*

¶ 17 Contrary to the findings of the trial court, this Court finds that raising these siblings in separate households will be detrimental to their emotional well-being. The custody arrangement granting the fathers primary custody does not promote the brother/sister relationship. In order to establish and foster the long-lasting benefits and emotional bonds created by sibling relationships, Doug and Jessica need to spend time together living as a family unit rather than in two separate home environments, no matter how close geographically.

¶ 18 The evidence relied upon by the trial court to separate this brother and sister was neither compelling nor forceful. To the contrary, the evidence of record presents compelling reasons to keep the children together. Therefore, not only does Mother's economic situation improve the quality of her life and that of her family, but the non-economic reasons also improve the quality of life for her family by ensuring that brother and sister are raised together. Accordingly, Mother has satisfied the first prong of *Gruber*.

¶ 19 The trial court also concluded that Mother failed to establish the second prong of *Gruber* because her motives were egocentric. Selfishness is not our standard. Our standard is that the move must not be motivated simply by a desire to frustrate or thwart the visitation rights

and loving relationship between the children and the non-custodial parent. *Gruber*, 583 A.2d at 439.

¶ 20 Both Dan and Mark testified that they did not believe that Mother's motive for relocating was to frustrate their visitation rights or relationships with their respective child. N.T. Custody Hearing, 11/15–11/16/99, 12/8–12/9, 12/13/99, 2/7 and 2/10/00, at 434 and 475. Nowhere does the trial court state that Mother's motive is to frustrate the fathers' visitations and relationships with their children. The trial court repeatedly reports finding that Mother's concern's are first for her own happiness and well-being. Trial Court Opinion, filed 6/16/00, at 19.

¶ 21 In such situations, it frequently is the case that parties' motives are based on selfish reasons, however, this does not equate to improper motive for relocation. *See Anderson v. McVay*, 743 A.2d 472, 475 (Pa.Super.1999) and *Perrott v. Perrott*, 713 A.2d 666, 672 (Pa.Super.1998) (finding that while relocating parent's motives were based on own individual needs rather than best interest of children, this did not mean that relocation was done to defeat the other parent's custodial interest). The fathers' motives for opposing the move were not improper. Accordingly, we find that the second prong of *Gruber* has been satisfied.

¶ 22 The final prong of *Gruber* requires that there be realistic arrangements available giving the non-custodial parent the opportunity to maintain a relationship with the children. *Gruber* reiterates that a move sought to secure substantial advantage for the custodial parent and children will not be disallowed simply because visitation cannot continue in the existing pattern. *Gruber*, 583 A.2d at 440. Furthermore, *Gruber* explains that shifting visitation arrangements to account for geographical distances should only occur when the proposed move has been shown to offer real advantages to the custodial parent and the children. *Id.* at 439.

¶ 23 Mother proposed a potential visitation schedule that both Dan and Mark testified would be acceptable and adequate in the event that relocation was granted. N.T. Custody Hearing, 11/15–11/16/99, 12/8–12/9, 12/13/99, 2/7 and 2/10/00, at 427 and 476. We acknowledge that from their perspective such an option may not be desirable or what they may have hoped for. However, they both stated that in the event the court allowed relocation, the proposal was acceptable.

¶ 24 We have already concluded that Mother established real advantages via the improvement in the quality of her life and that of her family, as well as demonstrating that relocation is the only solution which does not separate brother and sister and allows their sibling relationship to blossom and develop. Thus, we find that the third prong of *Gruber* has been satisfied. As all prongs of *Gruber* have been satisfied, we conclude that the trial court erred in its application of *Gruber*, Mother should have been allowed to relocate to Michigan with her children.

¶ 25 Furthermore, the well-being and best interests of Doug and Jessica are inextricably joined to Mother's happiness and improved quality of life. Additionally, they individually benefit from being able to grow up on a daily basis in the same home as brother and sister. Accordingly, we find the relocation to be in the best interest of Doug and Jessica.[9]

¶ 26 Order reversed. Remanded for entry of order consistent with this opinion. Jurisdiction relinquished.

---

9. Because our disposition of Mother's first issue provides the maximum relief sought, we need not address her remaining claims. We do note that Mother's challenge to the propriety of the court's allocation of expert fees is without merit. The trial court properly and equitably assessed payment upon the parties.