**Fowler v. Fowler**

540

C.P. of Armstrong County, no. 2002-0905-CIVIL.

*Alberta Beardsley,* for plaintiff.
*Cynthia Calarie,* for defendant.

VALASEK, *J.,* May 16, 2005—Presently before the court is plaintiff's petition to modify custody.

## HISTORY

Plaintiff and defendant married on October 22, 1997, and were divorced on August 7, 2001. The parties are the natural parents of son, Gage Fowler. Plaintiff, Ryan Fowler, initially sought custody of Gage, then four years old, in August 2002. A temporary order was entered on May 15, 2003, awarding defendant, Stephanie Fowler, primary physical custody of Gage. An order dated June 4, 2003, awarded plaintiff partial physical custody during Gage's summer vacation and rotating holiday breaks. In its statement of reasons, the court concluded that it was in Gage's best interests to remain with his mother

because he was "simply doing too well to cause a change in primary custody." (Statement of reasons and order p. 2.)[1] The court cautioned defendant in her use of vulgar language in Gage's presence, and further noted that any failure on Gage's part to continue to thrive could result in a change of custody.

On July 23, 2004, plaintiff filed this petition to modify custody requesting that the court grant him primary physical custody of Gage. Plaintiff claims that he is better able to provide for Gage's physical and emotional needs, as well as provide a more stable, healthy and proper environment.

A hearing on the petition was held on February 11, 2005. The court has resolved any disputed issue of fact based on the court's observation of the witnesses, their demeanor, their manner of testifying, the consistencies or inconsistencies in their testimony and the extent to which their testimony was corroborated or contradicted by other testimony.

## FINDINGS OF FACT

(1) Plaintiff is Ryan A. Fowler (Father).

(2) Father resides at 20 Vesper Lane, Unit E-1, Nantucket, MA 02554 with his current wife, Ryan M. Fowler (Wife) and their infant daughter, Sadie. They live in government-leased housing on a dead-end street. The house has three bedrooms, one-and-a-half bathrooms and a fenced yard. There is ample room and it is suitable for Father, his wife and two children.

---

1. This decision was based largely on Headstart teacher Cherrie Lynn Harper who described Gage as friendly, sociable, enthusiastic about learning, well-dressed, happy and developing appropriately.

(3) Father is a member of the United States Coast Guard. In or around June 2005, Father's work schedule will change to Monday through Friday from 7:45 a.m. to 3:45 p.m. He earns an average annual salary of $35,000.

(4) Wife is primarily a stay-at-home mom but gives paid horseback riding lessons during the summer.

(5) During Father's periods of physical custody, Wife watches Gage while Father is at work.

(6) Defendant is Stephanie D. Fowler (Mother).

(7) Mother resides with Gage at 280 S. McKean Way, no. 4, Kittanning, Pennsylvania. Gage has lived here with Mother for the past four years. The home has two bedrooms, one bathroom, a living room, dining room, kitchen and patio. It is suitable and adequate for Mother and Gage.

(8) Mother is employed as a cashier at Co-Go's. She works 20-25 hours per week on various shifts earning $5.65/hr. Mother is also a student at Butler Community College pursuing a certificate in medical coding. She graduates in May 2005.

(9) Mother's family has been active in Gage's life and can help as sitters if necessary.

(10) Mother has adequate arrangements for childcare while she is at work or school. Her mother, Kathleen McMillen (Grandmother) watches Gage at Mother's home and gets Gage on and off the school bus as needed.

(11) Gage has a loving relationship with Grandmother and other family members on Mother's side.

(12) Mother's parenting approach is stoic. She demands respect and is impatient with Gage. She is quick

to anger, which leads to yelling, cursing and inappropriate corporal punishment on occasion.

(13) Mother's boyfriend smokes in her apartment when he visits.

(14) Gage suffers from frequent ear infections and possible allergies.

(15) Gage has called Father after 11 p.m. on occasions.

(16) At times, Gage awakens in the morning and has to wait for Mother to wake up to make his breakfast.

(17) Gage spends many hours inside Mother's home watching television.

(18) Mother's interactions with Gage are limited due to Mother's hectic schedule, and although Mother's schedule may change following receipt of her education certificate, Mother's spare time is usually spent on personal matters not involving Gage.

(19) Gage perceives his mother as angry and mean.

(20) In the fall of 2003, Gage received several deficiency notices from school.

(21) Gage spent Christmas break in 2003 at Father's house. During this time, Father tutored Gage and teachers noted a marked improvement.

(22) Gage's academic progress for the 2004-2005 school year was satisfactory.

(23) From November 22, 2004 through February 16, 2005, Gage has been reprimanded three times for use of foul language, including the words "fuck" and "asshole" on the school bus, as well as for other loud and disruptive behavior.

(24) Gage has spent the past two summers in Nantucket, MA, with Father and Wife.

(25) Gage has a loving relationship with Wife and half-sister Sadie.

(26) Gage arrived at Father's house with behavior problems in the form of temper tantrums, anger and frustration, and noted difficulty sharing, as well as decreased physical stamina and an unhealthy appetite for junk food.

(27) Father and Wife maintain a routine with Gage including consistent meal times and bed times.

(28) Father and Wife are consistent with household rules and nutrition.

(29) Wife is awake in the mornings during Gage's visits and prepares him breakfast when he wakes up.

(30) Father spends one-on-one time with Gage and promotes outdoor activities and use of the imagination.

(31) Father and Wife limit Gage's television time.

(32) Father discovered Gage's speech impediment and placed him in speech therapy during the summer.

(33) Father placed Gage in counseling over the summer.

(34) During the time spent with Father, Gage's physical endurance increased and his social skills with other children improved. At the end of the summers spent with father, Gage is able to ride his bicycle longer and he is able to communicate his displeasure with his words instead of tantrums.

(35) Gage perceives Father's house as more positive and happy.

(36) Father and Wife do not disparage Mother to Gage.

(37) Gage adjusts well to life at Father's house.

## DISCUSSION

With any child custody case, including petitions for modification, the paramount concern is the best interests of the child. *Johns v. Cioci,* 865 A.2d 931, 936 (Pa. Super. 2004). The child's best interests are "based on a consideration of all factors that legitimately affect the child's physical, intellectual, moral and spiritual well-being." *Swope v. Swope,* 455 Pa. Super. 587, 591, 689 A.2d 264, 265 (1997). This determination is to be made on a case-by-case basis. *Myers v. DiDomenico,* 441 Pa. Super. 341, 345, 657 A.2d 956, 957 (1995).

It is clear that both parents are fit parents. Both love Gage and have a strong support network surrounding them. Additionally, Mother should be commended on her efforts to better herself with an education while raising a child.

In a case such as this, where both parents are fit to raise the child, the best interest test is first weighed "as to each parent and a parent will prevail when the weight of evidence shifts even slightly in his/her favor." *Wiseman v. Wall,* 718 A.2d 844, 850 (Pa. Super. 1998).

In its statement of reasons and order which awarded custody of Gage to Mother, the court found that Gage was doing well in her care. However, it was further stated that any failure to continue to thrive might alter the court's decision.

Based upon the court's findings, Gage is not continuing to thrive in his present situation. Certain distinct behavior problems, such as acting out on the school bus and his use of profane language, as well as Gage's lack of physical and mental stimulation at Mother's home,

frequent ear infections and speech impediment concern the court. These issues seem to be left alone while Gage is in the custody of Mother. It is only when Father is in custody of Gage that these problems are addressed.

Father encourages physical exercise, proper nutrition and use of Gage's imagination. His home is a non-smoking environment which is beneficial to Gage's inner ear problems and potential allergies. Father has also tutored Gage and sought the help of counselors and speech therapists.

Father's use of discipline also differs from Mother's. Whereas Mother will yell, push and hit, Father uses a one-on-one intervention. Mother's tendencies toward use of corporal punishment are of additional concern to the court because her actions seem to stem from her own impatience and anger rather than from the actions of Gage.

Additionally, as the court has previously noted in its statement of reasons, there exist an array of opportunities and experiences in Father's household that simply do not exist under Mother's care.

Upon consideration of all relevant factors, the court finds that when Gage is in the custody of Father, his physical and emotional health, speech, social disposition, manners and overall well-being improve. He develops additional tolerance and life skills in the presence of Father and Wife. Gage adjusts well to life at his Father's house.

Additionally, the court finds that Father is more likely to foster Gage's relationship with Mother than Mother does with Father, and that Father and Wife do not make disparaging comments about Mother in Gage's presence.

Therefore, the court finds that a modification of the present custodial arrangement will be in Gage's best interests.

## TEMPORARY ORDER

And now, May 16, 2005, for the reasons stated in the foregoing opinion, it is hereby ordered as follows:

(1) Plaintiff, Ryan A. Fowler (Father), and defendant, Stephanie D. Fowler (Mother), shall share legal custody of Gage Anthony Fowler (child), born June 19, 1998.

(2) Father shall have primary physical custody of the child commencing upon entry of the final order.

(3) Father and Mother shall each submit a proposed partial physical custody plan for Mother within 20 days of the date hereof. A final order will be entered by the court after receipt and consideration of the same.