## Marshall v. Mason

*April C. Simpson,* for plaintiff.
*Tonia M. Torquato,* for defendant.
*Tami Fees,* guardian ad litem.

GRINE, *J.,* July 30, 2010—Presently before the court is a petition for modification of current custody order. Zachariah Marshall (Father) asks the court to allow his two sons, Ezekiel Marshall and Kaleb Marshall be allowed to remain with him in his home in Sterling, Virginia where they have lived since approximately August 2009. Penny Mason (Mother) asks the court to award her full custody of the boys so that they can return to Centre County, Pennsylvania and live with her, her paramour Michael Reitz, and her two-year-old daughter Olivia.

## FINDINGS OF FACT

(1) Mother and Father were never married but lived together from 1993 through December 2006.

(2) Ezekiel was born on May 13, 1994 and Kaleb was born on July 27, 1997.

(3) Both Mother and Father have allegedly had problems with controlled substances in the past.

(4) Father has been diagnosed with several severe medical conditions over the years. He was at different times prescribed narcotics for the treatments of these conditions.

(5) Father admits that he relocated to Virginia in part to pursue a relationship with Patricia Gabriel. Father claims that his unstable employment in the State College area also contributed to his decision to relocate.

(6) Father claims that Mother chose to leave him and the children in December 2006.

(7) Mother is currently living with her paramour, Mr. Reitz.

(8) Mr. Reitz testified that he liked Kaleb, but had nothing to say about Ezekiel.

(9) Ezekiel, Father and Mother's sister, Kim Carney, claim that Mr. Reitz threatened to harm Ezekiel.

(10) Ezekiel and Kaleb were both interviewed by the court in the presence of counsel.

(11) Both children expressed a preference to live with Father.

(12) Both children expressed the belief that Mother could not properly care for them.

(13) Ezekiel claimed that if he had to live with Mother and Mr. Reitz, he would run away.

(14) Both children expressed that they were happy living in Virginia, and that they wished to remain there.

## CONCLUSIONS OF LAW

(1) "The paramount concern in a child custody case is the best interests of the child, based on a consideration of all factors that legitimately affect the child's physical, intellectual, moral and spiritual well-being." This determination is to be made on a case by case basis. *Speck v. Spadafore,* 895 A.2d 606, 609 (Pa. Super. 2006) (quoting *Swope v. Swope,* 455 Pa. Super. 587, 689 A.2d 264, 265 (1997); citing *Myers v. DiDomenico,* 441 Pa. Super. 341, 657 A.2d 956, 957 (1995).

(2) In a custody dispute, a trial court must determine what arrangement is in the best interest of the child, conducting a searching inquiry into all facts and circumstances having an impact on the child's physical, intellectual, moral, and spiritual well-being. *Jackson v. Beck,* 858 A.2d 1250, 1253 (Pa. Super. 2004).

(3) "[A]bsent compelling reasons to the contrary, the policy in Pennsylvania is to permit siblings . . . to be raised together" *Saintz v. Rinker,* 902 A.2d 509, 513 (Pa. Super 2006).

(4) "The Pennsylvania Domestic Relations Code, 23 Pa.C.S. §101 et seq., is clear that a trial court is required to consider a child's preference before entering an award of partial custody, as well as any other factor which will legitimately impact the child's physical, intellectual, and emotional well being. See 23 Pa.C.S. §5303(a)(1). The weight to be afforded to the child's preference varies with the age, maturity, and intelligence of that child, together with the reasons given for the preference. *Gianvito v. Gianvito,* 975 A.2d 1164, 1170 (Pa. Super. 2009) (citing *Wheeler v. Mazur,* 793 A.2d 929, 938 (Pa. Super. 2002)).

(5) "[A] parent's ability to care for a child must be determined as of the time of the custody hearing and not as of an earlier time" *Gianvito v. Gianvito,* 975 A.2d 1164, 1169 (Pa. Super. 2009.) (citing *Wiseman v. Wall,* 715 A.2d 844, 847 (Pa. Super. 1998).

(6) "When custodial parent seeks to relocate at a geographical distance and the non-custodial parent challenges the move, the custodial parent has initial burden of showing that the move is likely to significantly improve the quality of life for that parent and the children[, and,] [i]n addition, each parent has burden of establishing the integrity of his or her motives in either desiring to move or seeking to prevent it[;] . . . court must then consider . . . feasibility of creating substitute visitation arrangements to ensure continuing, meaningful relationship between children and non-custodial parent." *Gruber v. Gruber,* 400 Pa. Super. 174, 186, 583 A.2d 434, 440 (1990).

(7) The best interests of children cannot always be separated from the interests of their custodial parents, as the custodial parent's mental well being affects his or her ability to parent their child. *Thomas v. Thomas,* 739 A.2d 206, 214 (Pa. Super. 1999).

(8) Determinations regarding child custody and relocation must be made on a case-by-case basis. *Zoccole v. Zoccole,* 751 A.2d 248, 251 (Pa. Super. 2000).

## DISCUSSION

In a custody dispute, a trial court must determine what arrangement is in the best interest of the child, conducting a searching inquiry into all facts and circumstances

having an impact on the child's physical, intellectual, moral, and spiritual well-being. *Jackson v. Beck,* 858 A.2d 1250, 1253 (Pa. Super. 2004). The court finds that it is in the best interest of the children to remain living with Father in Sterling, Virginia. This determination is based on several factors. Both boys expressed a desire to remain living with Father. "The Pennsylvania Domestic Relations Code, 23 Pa.C.S. §101 et seq., is clear that a trial court is required to consider a child's preference before entering an award of partial custody, as well as any other factor which will legitimately impact the child's physical, intellectual, and emotional well being. See 23 Pa.C.S. §5303(a)(1). The weight to be afforded to the child's preference varies with the age, maturity, and intelligence of that child, together with the reasons given for the preference. *Gianvito v. Gianvito,* 975 A.2d 1164, 1170 (Pa. Super. 2009) (citing *Wheeler v. Mazur,* 793 A.2d 929, 938 (Pa. Super. 2002)). The court believes that given the age and the maturity of the two boys in this case, their desire to remain with Father should be one of the determining factors in this case. Additionally, Ezekiel's reasons for wishing to remain with Father are not based on childish whims. Ezekiel has expressed that he has been threatened by Mr. Reitz, and made it clear to the court that he would not be comfortable living with Mother. Kaleb also describe Mr. Reitz as "scary" leading the court to believe that as long as Mr. Reitz is living with Mother, Kaleb would also not be comfortable in her home.

"[A]bsent compelling reasons to the contrary, the policy in Pennsylvania is to permit siblings . . . to be raised together." *Saintz v. Rinker,* 902 A.2d 509, 513 (Pa. Super. 2006). The court recognizes that Mother has a

younger daughter, Olivia, and that she wants her boys to have a relationship with Olivia. The court finds that there are compelling circumstances to keep the boys and Olivia living in separate homes. The boys do not feel comfortable in Mother's home, and therefore the court does not believe that living with Mother is in their best interest.

"[A] parent's ability to care for a child must be determined as of the time of the custody hearing and not as of an earlier time" *Gianvito v. Gianvito,* 975 A.2d 1164, 1169 (Pa. Super. 2009) (citing *Wiseman v. Wall,* 718 A.2d 844, 847 (Pa. Super. 1998). The court agrees that there were times in the past where Father was not a proper resource for the children. The court, however, finds that Father has moved beyond his past issues with drugs, and has held steady employment for several years. Father clearly cares about the boys, and they have given the court no reason to believe that there are any current issues which would make Father an unfit parent.

Mother has not been a stable force in the children's life over the past few years. Mother chose to leave Father and the children in 2006. Mother has not taken advantage of arranged visitations with the boys in recent years. Mother is not in frequent contact with the boys while they are with Father. Mother does not have an adequate living space for the boys, as she lives in a two-bedroom residence and also has a two-year-old daughter. In a custody dispute, a trial court must determine what arrangement is in the best interest of the child, conducting a searching inquiry into all facts and circumstances having an impact on the child's physical, intellectual, moral, and spiritual well-being. *Jackson v. Beck,* 858 A.2d 1250,

1253 (Pa. Super. 2004). The court believes it is in the best interest of Kaleb and Ezekiel to remain in the primary custody of Father. The court bases this decision on several factors including the expressed preference of the boys, the lack of interest shown by Mr. Reitz in being a parent to Ezekiel, and Mother's failure to take advantage of her visitation time as well as her minimal contact with the children leading up to the custody hearing.

Father moved the boys to Virginia without permission of the court. Father, however, claims that he discussed the move with Mother, and that Mother had no objection. Mother denies this allegation. "When custodial parent seeks to relocate at a geographical distance and the non-custodial parent challenges the move, the custodial parent has initial burden of showing that the move is likely to significantly improve the quality of life for that parent and the children[, and,] [i]n addition, each parent has burden of establishing integrity of his or her motives in either desiring to move or seeking to prevent it[;] . . . court must then consider . . . feasibility of creating substitute visitation arrangements to ensure continuing, meaningful relationship between children and non-custodial parent" *Gruber v. Gruber* 400 Pa. Super. 174, 186, 583 A.2d 434, 440 (Pa. Super. 1990). The court finds that Father's decision to move to Virginia was based on his hope to provide the boys with a more stable life, and his fear that he would lose his employment in State College. Father is the sole financial provider for the children and also provides them with health insurance. The court finds that Father set up a reasonable method for continuing visitation with Mother, which Mother failed to take advantage off. Therefore the court will permit Father to remain in Virginia with the children.

The court believes that the children might benefit from attending counseling. Therefore the court advises Father that he should make a reasonable effort to obtain counseling for the children. Failure of Father to address the possible need for counseling for the children will be look at unfavorably in the event of a future motion for custody modification.

## ORDER

And now, July 30, 2010, after a hearing on the matter and a review of the parties' findings of fact and conclusions of law, it is hereby ordered and decreed as follows:

(1) Mother and Father shall share joint legal custody of their minor children Ezekiel Marshall and Kaleb Marshall

(2) Father shall be permitted to remain with the children in Sterling, Virginia. Accordingly, Father shall have primary physical custody of the parties' minor children subject to Mother's periods of partial physical custody as follows:

(i) Mother shall have custody of the children every other weekend during the children's summer vacation. Visits shall take place in State College, Pennsylvania.

(ii) Mother shall have custody of the children one weekend per month during the school year. These visits shall not interfere with the children's extra curricular activities unless such arrangements would prevent the children from visiting Mother on more than four consecutive weekends. Cancellation of a visit reasonably based on dangerous weather conditions shall not be held against either party.

(iii) Mother shall have custody of the children for two consecutive weeks in the summer,

(iv) Mother shall have custody of the children at other times as may be mutually agreeable between the parties.

(3) Both parents shall have full access to all relevant medical, dental, psychological, educational and religious records of the child. Each parent may obtain such records directly from the provider without the other parent's consent. Parents shall provide each other with any records not easily obtainable by the other parent. Any school district in which the child attends school shall provide both parents identical information. The custodial parent shall provide to the non-custodial parent on a weekly basis, all school papers, projects, or other products of children's development, so as to allow a sharing of those items as fully possible.

(4) In implementing the provisions of this order, both parents shall be flexible and act in the children's best interest. Both parents shall use their best efforts in presenting a united front to Ezekiel and Kaleb and in shielding the children from an awareness of their parents' discussions and differences. Both parents shall use their best efforts to insure that their spouses, significant others and extended families cooperate in carrying out in the intent and spirit of this order. Each party shall encourage the children in the exercise of the other parent's custody rights and stimulate the children to maintain a positive and healthy relationship with the other parent and the other parent's family. Each party shall cooperate in giving the other reasonable notice of their respective scheduling as it may affect visitation and non-visitation to

facilitate of the parties' individual planning and scheduling.

(5) Both parents shall be notified of, and invited to, major events in the children's life, including, but not limited to; graduations, awards presentations, performances by the children, academic and athletic competition in which the children participate, and similar extracurricular activities.

(6) Each parent shall promptly notify the other of any serious accident or illness or any legal or educational emergency involving the children while in that parent's custody. If the child is taking medications, that medication or a prescription for the medication shall be made available to each parent. The non-custodial parent shall be provided copies of medical assistance and insurance documents.

(7) Each parent must notify the other of any changes of residential or work address or telephone number.

(8) The parent who does not have custody shall be entitled to reasonable telephone contact with the children. Such contact shall not be monitored, or interrupted, by the custodial parent. In the event of long distance calls, the parents shall agree on specific times when the children will be available to receive calls.

(9) Father shall arrange for the children to attend counseling.

(10) Father shall obtain an evaluation by a batterer intervention program to determine whether he is eligible for batterer intervention services. The court would prefer that Father obtain this evaluation through a program certified by the Virginia Batterer Intervention Program.