**Pfeiffer v. Beaky**

*Allen I. Tullar,* for plaintiff.
*Abele A. Iacobelli,* for defendant.

FORD, *J.,* October 29, 2009—On September 16, 2009, I presided over a custody trial on various petitions. I entered an order on October 15, 2009, granting the parties shared legal custody of their two young children. Plaintiff, Michael B. Pfeiffer (Father), was made primary physical custodian. Defendant, Monica M. Beaky (Mother), was granted significant partial custody rights. In this opinion, I explain the reasons for the order.

## PROCEDURAL HISTORY

The parties separated on November 12, 2004. In an agreed order dated March 22, 2005, and filed on March 24, 2005, Mother was made the primary physical custodian of the parties' two children and Father was given significant partial physical custody rights. The parties shared legal custody.

On May 5, 2008, Father filed a petition for modification of custody wherein he sought increased physical contact with the children. His petition was scheduled for hearing on September 22, 2008. With the assistance of counsel, the parties conferred and advised the court that they had reached a custody agreement. As a result, the hearing did not take place. However, an agreement was never finalized so Father's petition for modification still required a hearing. This was one of the petitions that was addressed at the hearing conducted on September 16, 2009. On this petition, Father sought primary physical custody of the children.

On December 26, 2008, Mother filed a petition for modification. As she indicated in the petition, "Modification is necessary to accommodate petitioner and children's move to Exeter Township, PA." On the same date, Mother filed "notice of intention to relocate." In it she stated her intention to move from her previous location in Bethlehem, Lehigh County, to Exeter Township, Berks County, Pennsylvania. In the notice, she marked the block which reads, "I did not know, and could not reasonably have known, of the relocation in sufficient time to give 60 days' notice, and it is not reasonably possible to delay the date of relocation in order to give 60 days' notice."

On January 22, 2009, Father filed a petition for special relief. In that petition, Father alleged that Mother planned to immediately relocate with the children without his approval and without court order. He asked the court to transfer primary physical custody of the children to him to prevent a relocation to Berks County.

On January 30, 2009, I conducted a hearing on Mother's notice of intention to relocate and on Father's petition for special relief. At the conclusion of that hearing, I denied the request to relocate. I granted the Father's petition for special relief. While the parties remained joint legal custodians of the children, I transferred primary physical custody of the children to Father and granted Mother partial physical custody rights. This was done on an emergency basis and subject to a later full hearing on these petitions.

On February 20, 2009, Mother filed a petition to reconsider the January 30 order. That was denied by order dated March 23, 2009, and filed on March 27, 2009.

On March 3, 2009, Mother filed a notice of appeal to the Superior Court of Pennsylvania from the January 30, 2009, order whereby primary physical custody was transferred to Father. The appeal to the Superior Court was later withdrawn.

The parties proceeded to the final hearing on September 16, 2009, on Father's petition for modification, Mother's petition for modification and Mother's notice of intention to relocate. As to Mother's pleadings, even though she filed them pro se, she was represented by counsel at the final hearing.

## FINDINGS OF FACT

(1) The parties were married on August 5, 1995. The parties are the parents of two children, Andrew, born on October 23, 1997, and Dana, born on May 21, 1999.

(2) Mother was born on May 11, 1963. Father was born on June 16, 1966.

(3) During the marriage, the parties resided with their children in Bethlehem, Pennsylvania. The only schools that the children have ever attended have been Bethlehem School District schools.

(4) During the marriage, both parties took part in the appropriate child care duties. Mother was not employed outside the home. She devoted full-time attention to raising the children. Father was employed full-time outside the home.

(5) The parties separated on November 12, 2004. They divorced on November 17, 2005.

(6) In February, 2007, Mother began full-time employment performing clothing tailor duties at Brooks Brothers at the Promenade, a shopping mall in southern Lehigh County.

(7) Father has been working for Convatec for two years. This is a medical device company near Princeton, New Jersey. He commutes to work from his Bethlehem home which takes approximately one hour and 20 minutes, one way. Father remained in Bethlehem after the separation, despite the distance to his employer, so that he could be near the children and actively involved in their lives.

(8) Both parents care deeply about their children and want as much time as possible to spend with them. The children also love both parents.

(9) Mother presently lives at 1027 Hickory Lane, Exeter Township, Berks County, Pennsylvania. She lives there with her paramour, Steven Kruszewski, in a four bedroom, two bathroom, single family residence on approximately one-third of an acre of land. The children reside there periodically with Mother during her partial physical custody time periods. The neighborhood in which Mother lives is safe and pleasant in a suburban setting. There are a number of children who live in the area. The parties' children have befriended many of these children.

(10) Father resides at 738 Center Street, Bethlehem, Pennsylvania with his paramour, Devon George. The two children live there when Father has custody. The four bedroom Center Street home is comfortable and appropriate for the children. It is located in a safe neighborhood in a cultural part of Bethlehem near colleges and the historic section. There are only a few children in this neighborhood. The children's friends in Bethlehem are primarily schoolmates.

(11) Mr. Kruszewski and Ms. George have appropriate relationships with the children. They have done only beneficial things for the children. The children like and feel comfortable with Mr. Kruszewski and Ms. George.

(12) Since at least separation, the parties do not communicate well. Their verbal communications are infrequent and unpleasant. They communicate by e-mail but

those communications are not regular enough to keep each other advised of important issues regarding the children. The parties have little affection for each other. This was expressed by Father who, when asked, was not able to state anything positive about Mother's parenting abilities. In an e-mail (exhibit P-2), Mother told Father: "I cannot think of any possible situation which I would find more repugnant than having to sit in a room with you for even a fraction of a second. . . . F— Y—."

(13) From the date of separation until September 2008, Mother has been inflexible in granting accommodations to Father in the custody schedule despite reasonable requests. An accommodation was made in September 2008, to increase Father's weekday visit from an evening visit to an overnight visit. That was after the parties appeared in court the first time on Father's present petition for modification.

(14) Mother resigned her position at Brooks Brothers and took a job with Elite Sportswear in Reading on October 27, 2008. She works as a fit specialist there. It was by her e-mail dated December 15, 2008 (exhibit P-1) that Mother advised Father that she works at Elite Sportswear.

(15) In May, 2008, Father overheard statements from the children that Mother was thinking of moving to the Reading area. (Exeter is a suburb of Reading.)

(16) In December, 2008, Mother and Mr. Kruszewski signed the lease, as lessees, for their Exeter home.

(17) In the e-mail of December 15, 2008 (P-1), Mother advised Father, "I will be moving to Exeter Township, outside of Reading, approximately January 15." Mother

proceeded in the e-mail to describe the neighborhood and what schools the children will be attending in Exeter.

(18) In her capacity as owner and landlady, Mother entered a lease for her Bethlehem home in late 2008 or early 2009 with a new tenant to take up residence on approximately February 1, 2009. In preparation for the new tenant and the planned move to Exeter, Mother moved the furniture and other belongings from the Bethlehem home at some point in December or January 2009. For a period during one or both of those months, when the children were in the custody of Mother, they slept in sleeping bags on the floor of the Bethlehem residence. There were no cooking or eating accommodations there at that time so the children ate out regularly with Mother.

(19) It was Mother's intention to move the children to Exeter without court permission and without Father's consent. The move was prevented by court action taken on January 30, 2009, in response to a petition for special relief brought by Father.

(20) Mother told the children or led them to believe that they would be moving to Exeter. In addition to her discussions with them about a move, she and Mr. Kruszewski pointed out the schools that they would be attending. By the same token, Father has discussed custody issues with the children by assuring them that nothing would change in the custody case.

(21) After she secured her position at Elite Sportswear in late October 2008, until she moved to Exeter following the hearing on January 30, 2009, Mother commuted

to and from her work at Elite. This was a one-hour commute each way.

(22) Mother's work hours at Elite Sportswear are more flexible than the work hours she had at Brooks Brothers. The salary with each of these employers is approximately the same.

(23) Mr. Kruszewski works a day-shift job at Automotive Services Inc. He is also a deputy fire chief. In the latter position, Mr. Kruszewski cannot move from Berks County, Pennsylvania.

(24) Mother has several motivations for moving to Exeter. She likes the job at Elite Sportswear more than the job at Brooks Brothers where she claims she was subjected to sexual harassment. Moreover, she believes that the neighborhood in Exeter is preferable to the neighborhood in Bethlehem including the availability of friends for the children, the suburban setting and the availability of a better school district than the one in Bethlehem. (The respective merit of the two school districts has not been proven.) However, her primary motivation for moving to Exeter is to live with Mr. Kruszewski.

(25) The minor child, Dana, wishes she could spend more time with Mother and she misses Mother since the court-ordered changing of Mother from primary custodian to partial custodian. However, both children, Andrew and Dana, are doing well in their academics and in their several extracurricular activities. After the transfer of custody to Father in January, the children went through a difficult emotional adjustment but, over a period of weeks, that has improved substantially. Also despite the

difficulties of the parties, the children are thriving and progressing beautifully.

(26) When Father's request to be primary physical custodian was granted at the hearing of January 30, 2009, it was initially difficult for him and Ms. George to adjust to his being the primary custodian. However, with adjustments, a routine has been established. During periods of Father and Ms. George's unavailability, Father uses the services of Kate Snyder, a Moravian College student, to act as a nanny for the children. Ms. Snyder is a good influence on the children.

(27) If Mother had been granted the primary physical custody that she sought, midweek visits of Father with the children would have been extremely difficult because of the distance from his work in Princeton, New Jersey, to Mother's residence in Exeter. This would involve travel time of more than two hours, one way, (Mother acknowledged the likelihood that, if her proposed schedule were adopted, Father could not exercise weeknight visitation due to this distance.) Midweek visitation by Mother from Exeter to Father's home in Bethlehem is more feasible because the driving time is approximately one hour, one way.

(28) Both children have therapy with Ronald Esteve Ph.D., a respected psychologist who has a practice in Bethlehem. The children enjoy their sessions with Dr. Esteve. Father believes they are benefiting from these sessions. Mother has not witnessed positive change in the children as a result of their sessions with Dr. Esteve; however, she acknowledges that Dr. Esteve is available for the children to talk if they need that.

## DISCUSSION AND CONCLUSIONS OF LAW

"In Pennsylvania, custody and visitation matters are decided on the basis of the 'best interests of the child' standard, considering all factors which legitimately have an effect upon a child's physical, intellectual, moral and spiritual well-being." *White v. White,* 437 Pa. Super. 446, 450, 650 A.2d 110, 112-13 (1994).

In deciding what are the children's best interests, both parties have argued the factors enumerated in *Gruber v. Gruber,* 400 Pa. Super. 174, 583 A.2d 434 (1990). The present case involves an intra-state relocation by Mother. According to the Superior Court of Pennsylvania, the use of a *Gruber* analysis in cases involving intra-state relocations is left to the exercise of sound discretion by the trial court. Utilization of the *Gruber* factors is both helpful and appropriate in the present dispute because of the considerable distance between the present residences of the parties, namely, Bethlehem and Exeter, and the considerable distance between these residences and another significant location, Princeton, New Jersey, the place of Father's employment.

The *Gruber* factors, use of which assist in determining best interests, *B.K. v. J.K.,* 823 A.2d 987 (Pa. Super. 2003), are as follows: "First, the court must assess the potential advantages of the proposed move and the likelihood that the move would substantially improve the quality of life for the custodial parent and the children and is not the result of a momentary whim on the part of the custodial parent. . . . [Second], the court must establish the integrity of the motives of both the custodial and

noncustodial parent in either seeking the move or seeking to prevent it. . . . [Third], the court must consider the availability of realistic, substitute visitation arrangements which will adequately foster an on-going relationship between the child and the noncustodial parent." *Gruber,* 400 Pa. Super. at 184-85, 583 A.2d at 439-40.

Mother is seeking the court's approval to be the primary physical custodian and have the children join her in her relocation to Exeter. Mother has not met her burden of proving sufficient advantages with this move to satisfy the first *Gruber* factor. In addressing this first factor, the court is mindful that it must consider the economic and non-economic benefits that can be realized from a relocation. See *Mealy v. Arnold,* 733 A.2d 652 (Pa. Super. 1999).

In terms of economics, the evidence demonstrates that Mother's salary with Elite Sportswear in Exeter will be almost identical to the salary that she had with Brooks Brothers. There was little to no evidence presented and no argument made that Mother's standard of living would be increased by the relocation to Exeter.

At the hearing on September 19, 2009, Mother explained that she was a victim of sexual harassment at Brooks Brothers. She explained that the harassment was a significant reason for leaving Brooks Brothers. However, Father's counsel accurately points out that Mother did not mention this at the hearing on the petition for special relief on January 30, 2009, as a reason for wanting to move to Exeter. That hearing took place immediately before Mother's move. In evaluating this and the evidence from the September 19 hearing, I conclude that

this was not one of the significant reasons for her leaving Brooks Brothers.

There is an advantage with the new employment. Mother has more flexible hours when compared with her last employment. It also would make her more available to the children.

Mother testified that she had concerns about a number of aspects of the children's continued living in the Bethlehem home which she now leases to a tenant. She accurately noted that the Bethlehem home is in an urban area. She expressed concerns about the traffic around the home, concerns about crime and that the children do not have friends, with one exception, in the immediate neighborhood. She contended that the school district in Exeter is better than the one in Bethlehem. She testified that the children now have a number of friends in the immediate neighborhood of the Exeter home, a matter on which the children concurred. She argued that her pleasant rural setting is preferable to the Bethlehem urban setting.

With these explanations by Mother in mind, I find that Mother has not proven that it is better for her and the children to reside primarily in Exeter. To some extent, it depends upon perspective. Mother has convinced me that her home in Exeter is very comfortable for the children and is agreeable in all respects. Suburban living, however, is not necessarily preferable to urban living. The record demonstrates the type of area where the Bethlehem home is located. This area is well known to the parties, counsel and the judge. It is located in a delightful part of Bethlehem, very close to the historic Moravian College campus, the Lehigh University campus, and the other historic districts of Bethlehem. It has regular,

well-publicized cultural events. Nothing was presented to show that there are extraordinary traffic problems.

The documentary evidence that Mother presented to make a comparison of the two school districts is not convincing. Each school district appears well equipped to educate these children.

Evidence has not been presented that crime is more of a concern at the Bethlehem home than at the Exeter home.

As to children in the neighborhood, I believe that Mother has accurately described the advantage that her home has over the home in Bethlehem. On the other hand, the children have friends in Bethlehem too and they are primarily classmates. The children have developed these friendships through their years in Bethlehem's schools.

There is no evidence that the children are being held back in any way in their education in Bethlehem. To the contrary, these are intelligent, articulate, courteous children who are well on their way to a bright future. The parents' contributions to this impressive development of the children are happily acknowledged. Their teachers receive some of the credit too. The children are excelling in their classes in Bethlehem.

I note that evidence was not presented that the parties' respective families of origin should be considered in deciding the issues that were presented to the court. There was no testimony presented about these families.

Mother has not proven that she is somehow better off with her move to Exeter than she was when she lived in

Bethlehem. The evidence does not establish that the children would be better off with such a move. It would be speculation by me to conclude that the children will be better off with a relocation to Exeter based upon the evidence that was presented. On the other hand, it is a fact that they are doing well and have done well in their present primary living circumstances.

I have carefully examined the evidence pertaining to the motives of the parents. As to Father, he has no need or use for Mother. Unfortunately, he displays that when he communicates with her and when he fails to communicate with her. The evidence does not demonstrate that he is opposing her relocation with the children because of his dislike for her or to spite her. Rather, I conclude that he opposes the relocation of the children because he is rightly concerned that it will result in less contact for him with the children.

As to Mother, I reject her contentions that she took the new job because of sexual harassment. I believe she took the job because of the better hours and what sounds like exciting work compared to the work at Brooks Brothers. She could have taken this new job and done it without relocating. She demonstrated for a few months her ability to commute to and from Reading which was a shorter commute than the one for Father who has been commuting to and from Princeton for years so that he could spend time with the children. Whether it was in Bethlehem or in Exeter, Mother could have worked at Elite Sportswear. The change of employment does not explain why Mother relocated and it does not explain the reason for the relocation.

Mother relocated with the primary objective of being with and living with Mr. Kruszewski who is not permitted to live outside Exeter because of his position as deputy fire chief. This was the overriding objective for Mother as was demonstrated by her move earlier this year despite her ability to commute to the job in Reading and despite the court's not permitting her to take the children to Exeter with her. This primary motivation is clear from the evidence but its significance was minimized by Mother.

Mother knew that Father was seeking more time with the children because he had filed the petition for modification. Still, she finalized her plan to move with the children and she almost put it into effect. Mother only notified Father of her planned move after all the arrangements were made. If matters proceeded as Mother anticipated, she would have been living in Exeter with the children before the court had an opportunity to act on Father's petition for more time with the children. Court and Father would have been presented with accomplished facts of the children's primarily residing with Mother in a new geographic area and attending school in a new school district. The several aspects to Mother's motivation in doing these things are certainly not worthy of praise.

Are there realistic substitute custody arrangements if the Mother were to relocate with the children? My first observation is that Mother could have accomplished many of her goals without a relocation and without uprooting the children from the home that they have known since birth. She could have resided in her home in Beth-

lehem with the children and commuted to Elite Sportswear in Reading. She demonstrated her ability to do that over a period of two or three months. She could have maintained a relationship with Mr. Kruszewski although she would not have been able to live with him because of the respective locations of the homes they then occupied. Father then could have maintained his relationship with the children through his continuing to commute to and from his employment in Princeton.

Mother acknowledges that, if the children primarily reside with her in Exeter, for all practical purposes, Father's ability to have midweek contact with them is eliminated because of a one-way commute of approximately two hours and 20 minutes at the beginning of such visitations when the Father would travel from his work in Princeton to the home in Exeter. That would be followed by a one-hour commute back to his Bethlehem home.

Mother proposed increasing Father's time with the children on occasions other than midweek with the net effect that, over time, his contact with the children would be of approximately the same frequency that existed before the move to Exeter.

Mother's proposals are problematic for several reasons. First, except for the living with the paramour, a move to Exeter would have been unnecessary. Second, her proposals eliminate midweek contact which is very important for Father. Her proposals ignore the fact that Father was attempting to increase his contact with the children for, what appears to the court to be, good faith reasons. Finally, what Mother proposes results in incon-

sistent time for Father with the children. When the parties and the children resided in Bethlehem, the contact of both parents was regular in every week. With what Mother proposes, Father is effectively cut off from contact with the children during the school days.

Under all of these circumstances, Mother has not met her burden of proving any of the *Gruber* factors.

The best interests of the children require that Father be primary physical custodian. This is not to say he has no faults. He, like Mother, has shown no willingness to communicate with the other parent as a mature adult should. He, like Mother, has given assurances to the children about custody case outcomes that he has no business giving. Nevertheless, I believe he will be more flexible in accommodating Mother than Mother has been with him. I have more confidence in Father's following court expectations and court procedures than I have in Mother. I have this hesitation about Mother because of what she did in regard to her attempted unilateral relocation to Exeter. Father has subordinated the idea of long employment commutes to live in the same town as the children to be a constant factor in their lives while respecting Mother's custody rights and court processes to alter those. Mother moved to Exeter to live with her paramour with the knowledge, immediately before her move, that it would mean loss of primary custody. She did this even though she already had the viable arrangement of living in Bethlehem with the ability to commute to Exeter for work, to have a relationship with her paramour and to facilitate Father's partial custody rights. Mother's unilateral planning, if the court permitted it to succeed, would have disrupted Father's beneficial, con-

stant presence in the children's lives. It would have plucked the children from their known productive environment in Bethlehem and placed them in Exeter where some dynamics of how the children would do in Exeter are necessarily unknown.

The children have loving environments in Exeter and in Bethlehem. They have been thriving by residing primarily in Bethlehem. With the concerns I just expressed, it would be detrimental to the children to uproot them and permit Mother to become the primary physical custodian. Were that allowed to happen, Father's role in the children's lives would be lessened. Moreover, the court has responded to the children's (particularly Dana's) understandable and reasonable request to spend more time with Mother by increasing Mother's partial custody time beyond what she had from January 30 to the entry of the order on October 15, 2009.

For all of the above reasons, Father's petition for modification is granted. Mother's petition for modification is denied and her request to relocate with the children to Exeter is denied.